IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HAWAII CHILDREN'S BLOOD AND CANCER GROUP, | CIVIL NO. CV03-00708 SOM LEK (Other Civil Action) |
| Plaintiff, | MEMORANDUM IN SUPPORT OF MOTION |
| vs. | |
| HAWAI`I PACIFIC HEALTH; KAPI`OLANI MEDICAL SPECIALISTS; KAPI`OLANI MEDICAL CENTER FOR WOMEN AND CHILDREN, | |
| Defendants. | |

MEMORANDUM IN SUPPORT OF MOTION

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................... 1

    A.    Federal Court Claim ............................................................. 3

    B.    This Court's October 22, 2004 Court Order Held that the State Court Action is Duplicative of the Federal Court Action ...................... 4

    C.    HCBCG and Dr. Woodruff's Second Amended Complaint in the State Court Consolidates Both the Federal and State Court Actions ..... 7

        1.    The Additional Defendants Named in the State Court Action Are Necessary for Complete Adjudication of the Federal Court Action .......................................................................... 8

        2.    Significant Developments in the State Court Action. ............... 10

II. ARGUMENT ................................................................................. 15

    A.    Subsequent Developments in the State Case Have Subsumed the Claims and Parties of the Federal Action, Therefore, Dismissal is Warranted ......................................................................... 15

        1.    HCBCG's and Dr. Woodruff's subsequent attempt to amend the state court action to destroy the duplicate nature of the proceedings is disingenuous and proof that they are attempting to manipulate the state court through this federal action. ..................................................................... 22

        2.    The parties and claims in the federal action are inextricably interrelated with the state court action as the parties' claims and additional defendants are all included in the comprehensive state court claim. ......................................... 24

        3.    The federal court docket indicates a lack of activity. ............... 26

B.   The Defendants in the State Action Will Be Significantly Prejudiced if the Federal Action is Allowed to Proceed to Trial Before the State Action ...................................................................................27

C.   The Federal Action Should Be Stayed ................................................29

D.   The May 23, 2006 Trial Date Should be Continued...........................30

III.  CONCLUSION................................................................................................32

## TABLE OF AUTHORITIES

Page

Cases

Aetna Casualty and Sur. Co. v. Kerr-McGee Chem. Corp.,
875 F.2d 1252 (7th Cir. 1989) ........................................................................19

American International Underwriters, (Philippines), Inc. v.
Continental Insurance Company, 843 F.2d 1253 (9th Cir. 1988)............20, 29

Attwood v. Mendocino Coast Dist. Hosp.,
886 F.2d 241 (9th Cir. 1989) ...................................................6, 15, 16, 17, 19

Cerit v. Cerit,
188 F.Supp. 2d 1239 (D. Hawaii 2002)...................................................20, 29

Colorado River Water Conservation Dist. v. United States,
424 U.S. 800 (1976)...........................................................4, 5, 15, 20, 21, 30

Jones v. Illinois Cent. R.R.,
859 F. Supp. 1144 (N.D. Ill. 1994)...............................................18, 19, 20, 29

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.,
460 U.S. 1 (1983)................................................................................5, 15, 30

Nakash v. Marciano,
882 F.2d 1411 (9th Cir. 1989) ........................................................................4

Robert's Hawai'i School Bus v. Laupahoehoe Transp. Co., Inc.,
91 Haw. 224, 987 P.2d 853 (1999)................................................................21

State of Idaho v. State Board of Examiners,
567 F.2d 858 (9th Cir. 1978) ........................................................................21

United States v. Willis, 958 F.2d 60 (5th Cir. 1992) ................................................31

Statutes

18 U.S.C. § 3161 ..................................................................................................31

42 U.S.C. §1983 ..................................................................................................16

42 USC §12101-12213 .........................................................................................18

45 U.S.C. §§51-60 ................................................................................................18

Rules

Local Rules of Practice for the United States District Court for the District of
      Hawaii Rule 40.5 ...........................................................................................31

Local Rules of Practice for the United States District Court for the District of
      Hawaii Rule 40.6 ...........................................................................................31

Local Rules of Practice for United States District Court for the District of Hawaii
      Rule 40.4 (2005) ...........................................................................................30

<u>MEMORANDUM IN SUPPORT OF MOTION</u>

I.    <u>INTRODUCTION</u>

Plaintiff Hawaii Children's Blood and Cancer Group ("HCBCG"), an unincorporated association consisting of Kelley Woodruff, M.D. ("Dr. Woodruff") and Robert Wilkinson, M.D. ("Dr. Wilkinson"), filed a Complaint in this Court on December 29, 2003 alleging that HPH Defendants committed anti-trust and monopoly violations, which mirrors a state law action Dr. Woodruff brought against HPH Defendants almost two years prior. Counsel for Dr. Woodruff and HCBCG are the same in both the federal and state actions. Because Dr. Woodruff was not satisfied with the speed at which discovery in the state action was progressing, HCBCG filed the instant federal court action alleging identical claims.[1]

This Honorable Court previously granted HPH Defendants' motion to stay the instant federal action on October 22, 2004, concluding that "[t]o proceed in the federal case at this time would result in duplicative, piecemeal litigation." <u>See</u> Order Denying Defendants' Motion to Dismiss, and Granting Defendants' Alternative Motion to Stay Proceedings Pending Resolution of the Concurrent State

---

[1] This was discussed in the previous Motion to Dismiss. To the extent that the instant motion relies upon the factual and legal underpinnings set forth in its original moving papers, HPH Defendants incorporate by reference and adopt the arguments made in HPH Defendants' Motion to Dismiss or In the Alternative Stay Proceedings Pending Resolution of the Concurrent State of Hawaii Circuit Court Case filed herein on May 27, 2004, and HPH Defendant's Reply Memorandum filed herein on September 20, 2004.

of Hawaii Circuit Court Case filed October 22, 2004 ("Order"), attached hereto as Exhibit "B". However, on October 22, 2004, rather than dismiss the action, this Court concluded that a stay was appropriate to ensure that the court would meet its duty to exercise jurisdiction in the event that all issues were not resolved by the state case. <u>See</u> Order dated October 22, 2004 at 11.

Subsequent to the hearing, HCBCG and Dr. Woodruff filed a Second Amended Complaint in state court on February, 17, 2005, which added HCBCG as an additional plaintiff, and also included all of HCBCG's anti-trust and monopoly claims set forth in the federal lawsuit. <u>See</u> Second Amended Complaint filed February 17, 2005, attached hereto as Exhibit "C".

HCBCG and Dr. Woodruff readily admit that the Second Amended Complaint "consolidates a Complaint Dr. Woodruff filed in [state] Court on January 11, 2002, and a Complaint by Hawaii Children's Blood and Cancer Group under sections 1 and 2 of the Sherman Act and the Lanham Act, 15 U.S.C. 1125" filed in federal court. <u>See</u> Exhibit "C" at 2. Therefore, for all intents and purposes, the circuit court action merged the federal and state actions, with HCBCG's claims now being brought pursuant to, and protected by, state anti-trust law. As the parties, claims, and alleged damages of the federal action have been subsumed by the state court action, the instant case is ripe for dismissal.

There are no issues in the federal action which will remain unresolved following the state case, as HCBCG's claims have been subsumed therein. Yet, if the federal action is resolved prior to the state case, the issues decided therein may significantly impact and prejudice defendants in the state case who are not parties to the federal litigation. Therefore, HPH Defendants respectfully request that the court grant this Motion to Dismiss or, in the alternative, stay the federal proceedings or to continue the trial.

A.    Federal Court Claim

As stated in HPH Defendants' initial moving papers, and as agreed by this Honorable Court, HCBCG's federal claim filed on December 29, 2003, and amended on June 21, 2004, is substantially duplicative of the state court action filed almost one year prior. Exhibit "B" (Order) at 3. The federal claims, which mirror the state law claims, allege violations of federal anti-trust laws, including the Sherman Act, 15 U.S.C. §§ 1, 2, and the Lanham Act, 15 U.S.C. § 1125 (asserting that false and misleading statements were made about HCBCG's physicians). See First Amended Complaint filed herein on June 21, 2004; and Exhibit "B" (Order) at 3. HCBCG seeks declaratory judgment that HPH Defendants violated §§ 1 and 2 of the Sherman Act, and specific performance requiring that HPH Defendants offer all existing and new patients the option of receiving "team care" which includes HCBCG and HPH Defendants. Id.

3

B.    This Court's October 22, 2004 Court Order Held that the State Court Action is Duplicative of the Federal Court Action

On October 22, 2004, this Court granted HPH Defendants' Motion to Dismiss, or In the Alternative, to Stay Proceedings Pending Resolution of the Concurrent State of Hawai'i Circuit Court Case filed May 27, 2004. As such, the court stayed the federal action "pending resolution of the state court case." See Order at 1. The rationale behind this Court's holding was that the federal court action was substantially duplicative of the current state court action, thus warranting application of the Colorado River abstention doctrine. See Exhibit "B" (Order) at 1; and Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 818 (1976).

The court noted that in exceptional circumstances, the court may abstain from exercising jurisdiction, and that the instant federal action involving HCBCG is such a case that necessitates abstention. See Exhibit "B" (Order) at 4 (citing Nakash v. Marciano, 882 F.2d 1411, 1415 (9th Cir. 1989)[2]. Additionally, this Court correctly observed that "[t]he facts and issues to be determined in the state proceedings and those to be decided in this Court are identical. To permit this case to go forward at

_____

[2] In determining whether abstention is warranted, the Ninth Circuit set forth the following factors to be determined; (1) whether either court has assumed jurisdiction over the res; (2) the relative convenience of the forums; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) whether the state proceeding is adequate to protect the parties' rights; and (7) the prevention of

this point, therefore, **would result in duplicative and wasteful litigation**." Exhibit "B" (Order) at 4 (emphasis added).

In determining that a stay of the federal action was appropriate, this Court utilized the factors articulated by <u>Colorado River</u> and <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.</u>, 460 U.S. 1, 25-6 (1983). <u>See</u> Order at 4. Specifically, this Court found that the third and fourth factors, addressing piecemeal litigation, and the order in which the forums obtained jurisdiction, "weigh heavily in favor of staying the federal case." Exhibit "B" (Order) at 5. This Court explicated that piecemeal litigation would result from adjudicating the federal claim because the state court obtained jurisdiction first and because both actions raise "substantially similar issues." <u>Id.</u> at 5-6. The court also noted that the boycott alleged in HCBCG's federal suit, which took place after the state suit was filed, is merely the continuation of the monopoly conduct alleged in the state court case. <u>Id.</u> at 6.

This Court concluded that to prevail in either the state or federal case, "HCBCG must prove the existence of a monopoly," and that the showing required in both forums is the same because of the similarity in the state and federal anti-trust laws. <u>Id.</u> at 6. Recognizing the duplicity of HCBCG's state and federal claims with respect to the issue of defamation, the court determined that HCBCG's Lanham Act claim requires proof of the underlying defamation claim raised in the

"forum shopping."

state case, as both claims, defamation and Lanham, "complain of allegedly false and misleading information given to patients and physicians." Id. at 7.

Acknowledging that significant progress occurred in the state court case -- where a discovery master was appointed, mediation attempts were made, and a trial date of October 3, 2005 was set -- this Court concluded that proceeding in the federal court "would result in duplicative efforts and a waste of judicial resources." Id. at 8.

With respect to the fifth and sixth factors concerning abstention, this Court determined that although the federal courts have exclusive jurisdiction over Sherman Act claims, the state court is more than adequate to address the monopoly issues because that state and federal monopoly law contain parallel language. Id. at 8. As such, this Court concluded that "**HCBCG's interests will be fully protected by the state court proceedings.**" Id. (emphasis added).

After examining all the relevant factors, the court determined that a stay was warranted and would prevent duplicative, piecemeal litigation as there is sufficient overlap between the parties and the claims to protect HCBCG's interests in state court. The court also noted that a stay and not dismissal, is appropriate in this case. Id. at 11, (citing Attwood v. Mendocino Coast Dist. Hosp., 886 F.2d 241, 244 (9th Cir. 1989)). Despite the conclusive finding that the state and federal proceedings were duplicative, warranting a stay of the federal court case based on federal

abstention law, the court lifted the stay and set trial and pretrial deadlines. <u>See</u>

Minute Order filed herein on July 19, 2005. Trial in the federal court action is

presently scheduled for May 23, 2006.

C.    HCBCG and Dr. Woodruff's Second Amended Complaint in the State
      <u>Court Consolidates Both the Federal and State Court Actions</u>

Following the Federal Court's October 22, 2004 order granting HPH

Defendants' motion to stay the instant action, HCBCG and Dr. Woodruff filed a

Second Amended Complaint in the state circuit court. <u>See</u> Second Amended

Complaint filed February 17, 2005, attached hereto as Exhibit "C".

The Second Amended Complaint admittedly is a consolidation of

Dr. Woodruff's state court claim and the complaint filed by HCBCG in the federal

court. <u>See</u> Second Amended Complaint at 2, ¶1. Therefore, the state court case

now incorporates HCBCG as a defendant and includes all of HCBCG's anti-trust

claims, which were set forth in the federal action. Presently, the parties, counsel,

and claims before the federal court are subsumed by the state court action.

Comparing the state Second Amended Complaint with the federal First

Amended Complaint, it is clear that counts I, II, and IV of the federal complaint

(Monopolization 15 U.S.C. §2, Refusal to Deal 15 U.S.C. §1, Attempt to

Monopolize 15 U.S.C. §2 and False and Misleading Advertising per the Lanham

Act 15 U.S.C §1125 respectively), correspond to counts II, III, IV, V, and VII of

the Second Amended Complaint. The following chart demonstrates the similarities of the federal and state court complaints:

| First Amended Complaint [Federal] | Second Amended Complaint [State] |
|---|---|
| Count I: Monopolization (Continuing) 15 U.S.C. §2 | Count II: Unlawful Price Fixing HRS §480-4(a); and Count VI: Monopolization/Attempt to Monopolize Practice of Ped Hem/Onc, HRS §480-9 |
| Count II: Refusal to Deal 15 U.S.C. §1 | Count III: Unlawful Attempt to Control Prices and Refusal to Deal HRS §480-4(b) |
| Count III: Attempt to Monopolize 15 U.S.C. §2 | Count IV: Unfair competition; HRS §480-2; and Count V: Monopolization/Attempt to Monopolize Hospital Care HRS §480-9 |
| Count IV: False and Misleading Advertising: Lanham Act 14 U.S.C. §1125 | Count VII: Unlawful Publication of Misleading/Confusing Information HRS §481A-3 |

As demonstrated above, the parties and the claims have been consolidated, therefore the claims and parties in the federal court case are included in the state court case.

1.    The Additional Defendants Named in the State Court Action Are Necessary for Complete Adjudication of the Federal Court Action.

Notwithstanding the fact that Dr. Woodruff and HCBCG are plaintiffs and that the HPH entities are defendants in the state and federal action, the state court action is also a more complete lawsuit as certain indispensable parties, necessary to the complete and final adjudication of HCBCG's anti-trust claims, in state and

federal court, are only named as defendants in the state action[3]. Deloitte & Touche ("Deloitte"), an accounting firm, conducted an internal investigation of Dr. Woodruff's billing procedures at the Kapiolani Pediatric Ambulatory Unit ("PAU"), the findings of which formed the basis for a Voluntary Disclosure to the Office of Inspector General. See Voluntary Disclosure dated September 2001, attached hereto as Exhibit "D". The Voluntary Disclosure became the catalyst for Dr. Woodruff's claims in the state court action. Deloitte, however, is only a defendant in the state court action only.

Similarly, Dennis Warren, Esq. ("Warren"), the attorney who represented the HPH Defendants throughout the Deloitte investigation and took the lead in preparing the voluntary disclosure, is also only a defendant in the state court action. Through discovery conducted in the state case, specifically during the deposition of Dr. Wilkinson, it was learned that the actions of both Deloitte and Warren, also comprised HCBCG's anti-trust claims. See Deposition of Robert W. Wilkinson, M.D., Volume II, taken October 15, 2005 at 227:3-25; 228:1-13, attached hereto as Exhibit "E." Consistent with Dr. Wilkinson's testimony, the Second Amended Complaint is laden with allegations that Deloitte and Warren conspired with the HPH Defendants to perpetuate anti-trust and monopolistic activity to the detriment

---

[3] In the state action, Dr. Woodruff identified Deloitte & Touche and Dennis Warren, Esq. as additional defendants on June 30, 2003.

of plaintiffs.  See Exhibit "C" (Second Amended Complaint) at 37 ¶93, p. 38 ¶103,

p. 40 ¶114, p. 43 ¶125, p. 44 ¶132, p. 48 ¶153, p. 50 ¶¶165-168, p. 53 ¶185.

Because Warren and Deloitte are integral to HCBCG's anti-trust claims, and

are not defendants in the federal court anti-trust action, any finding that HPH

Defendants participated in anti-trust activity in the federal court may cause undue

prejudice in the state court action.  If HPH Defendants are found liable in federal

court, the rulings may be utilized to the detriment of Warren and Deloitte.

2.     Significant Developments in the State Court Action.

In addition to the consolidation of HCBCG's claims in the Second Amended

Complaint, significant progress has occurred in state court which supports dismissal

of the concurrent and duplicative federal case.  Prior to the stay, the parties also

agreed to utilize the services of a facilitator, Lorraine Stringfellow, Ph.D., to assist

in ameliorating the relationship between the physicians in the PAU since

Dr. Woodruff's termination.  Drs. Woodruff and Wilkinson presently have medical

staff privileges at Kapiʻolani Medical Center for Women and Children and still

continue to see their oncology patients at Kapiʻolani.  See Deposition of Robert

Wilkinson, M.D., Vol. I, taken October 14, 2005, at 10:24-25-11:1-9, attached

hereto as Exhibit "E", and Deposition of Kelley Woodruff, M.D., Vol. I, taken

October 6, 2005, at 37:6-8; 57:20-25; 58:1-8, attached hereto as Exhibit "F".  Thus,

Drs. Wilkinson and Woodruff, since the inception of both the state and federal

actions, have been working, and continue to work, side by side with the Kapiolani

Medical Specialists ("KMS") employed hem/onc physicians. As a result, some

conflicts have arisen which required the assistance of an in-house facilitator. All

parties agreed to participate, and as such, the parties have reached tentative

agreements concerning the KMS call schedule and general conduct in the PAU.

See Declaration of Kenneth S. Robbins.

Additionally, Daniel Bent, Esq. was appointed mediator by Judge Dexter Del

Rosario during the infancy of this case. Mediation efforts with Mr. Bent have not

been successful. See Declaration of Kenneth S. Robbins. Judge Del Rosario also

appointed the Honorable Patrick Y.S.L. Yim (retired) to serve as discovery master

in the state court action. Later, the Honorable Bert I. Ayabe expanded Judge Yim's

role to include jurisdiction over all discovery disputes and matters in the state case,

including disputes involving non-parties. See Declaration of Kenneth S. Robbins;

and Supplemental Order Regarding Discovery Master, filed June 28, 2005, attached

hereto as Exhibit "G".

On, July 26, 2005, Judge Ayabe ordered the continuation of the trial date

from October 3, 2005 to June 5, 2006 because the parties required additional time to

complete discovery and it was apparent that due to the extensive document

productions, in excess of 30,000 pages, and numerous depositions which needed to

be scheduled, trial would not proceed as originally scheduled. See Trial Setting

11

Status Conference Order of: July 26, 2005, filed 7/26/05, attached hereto as Exhibit "H".

In state court, HCBCG and Dr. Woodruff recently filed a motion for summary judgment with respect to Dennis Warren's allegedly defamatory statements. See Plaintiffs' Amended First Motion for Partial Summary Judgment filed September 22, 2005, attached hereto as Exhibit "I" (cover page only as the document is voluminous). This substantive motion was opposed by all defendants as meritless and premature. After a hearing on the merits, the Honorable Bert I. Ayabe, denied plaintiffs' motion. See Minute Order dated October 31, 2005 (denying plaintiffs' motion for partial summary judgment) attached hereto as Exhibit "J".

In addition to the dispositive motions filed in state court, the parties have also participated in 23 depositions tallying more than 30 deposition days. Ten 30(b)(6) depositions have been taken of various healthcare providers, and agencies. See Declaration of Kenneth S. Robbins. Drs. Woodruff and Wilkinson, who are the principals and only members of HCBCG, have been deposed over the course of approximately nine days. See Declaration of Kenneth S. Robbins.

The parties have also had numerous meetings/conferences with Discovery Master Judge Yim, and the Honorable Bert I. Ayabe to address many discovery and pretrial issues.

12

On October 27, 2005, the parties attended a status conference with Judge Ayabe, during which the federal court stay and subsequent trial deadlines were discussed, especially the federal court trial date of May 23, 2005. See Declaration of Kenneth S. Robbins. The court noted that the May 23, 2006 federal trial date is only two weeks prior to the June 5, 2006 trial date in state court and that it would make sense to have only one trial in either state or federal court. See Declaration of Kenneth S. Robbins. Judge Ayabe also indicated that there is a high likelihood that the state case will proceed to trial as scheduled because it is the only case he has scheduled for trial during the time period in question. Id. The court noted that often times, a case such as the Woodruff action, involving numerous mainland witnesses/parties, will have priority over other cases in terms of trial setting. See Declaration of Kenneth S. Robbins. Therefore, practically speaking, the state court action may be considered "firm set."

At the October 27, 2005 status conference, Judge Ayabe discussed the possibility of mediation with the parties. On November 7, 2005, Judge Ayabe ordered the parties to participate in mediation with David L. Fairbanks, Esq. See Order No. 1 Regarding Mediation filed November 7, 2005, attached hereto as Exhibit "K". The mediation with Mr. Fairbanks is scheduled to commence on February 7, 2006. See Declaration of Kenneth S. Robbins.

13

On November 18, 2005, Discovery Master Yim held a conference to address deposition scheduling issues raised by plaintiffs' counsel. See letter from Mr. del Castillo to Judge Yim dated November 10, 2005, attached hereto as Exhibit "L". Although the discovery cut off in the state court action is in April 2006, plaintiffs sought to have Judge Yim compel the depositions of HPH's mainland witnesses. As HPH's counsel has repeatedly represented, the numerous depositions plaintiffs seek have required a Herculean effort to coordinate. See letter from Kenneth S. Robbins, Esq. to Judge Yim in opposition dated November 15, 2005, attached hereto as Exhibit "M". Moreover, despite a prior agreement that no depositions would be taken during the month of November while counsel for HPH Defendants was not present in state and an agreement not to arbitrarily notice depositions without first conferring with opposing counsel, plaintiffs arbitrarily noticed the depositions of two non-party witnesses. Id. At the Discovery Conference, Judge Yim struck plaintiffs' arbitrarily noticed depositions and ordered the parties to participate in a further discovery conference to schedule the remaining depositions. See Declaration of Kenneth S. Robbins. Subsequently, the parties met with Judge Yim on November 21, 2005 and crafted a mutually agreeable discovery schedule within the state court discovery deadlines, when counsel and the witnesses are available to participate. See deposition calendar prepared by Mr. Robbins, attached hereto as Exhibit "N".

Judge Ayabe scheduled and conducted a follow-up status conference in the state court case, which was held on December 8, 2005. Judge Ayabe inquired into the status of the state court action and he and counsel discussed the status of the federal court case as well. Counsel for HPH confirmed that a Motion to Dismiss, Stay or Continue Trial in the federal court action would be filed shortly. When asked, Judge Ayabe confirmed again that the state court case is the only trial he has scheduled for June 6, 2006. He indicated once again that he and his courtroom are available for trial of the state court action. See Declaration of Kenneth S. Robbins.

II.    ARGUMENT

    A.    Subsequent Developments in the State Case Have Subsumed the Claims and Parties of the Federal Action, Therefore, Dismissal is Warranted

Although this Court previously ruled that a stay, rather than dismissal, is preferable in the instant case because the Colorado River and Moses Cone factors weighed in favor of abstention, the changed circumstances subsequent to the stay warrant dismissal, as HCBCG's anti-trust claims in the federal case will be adequately protected by the state action. Resolution of the state action will leave no issues for adjudication in federal court, as the cases have been completely consolidated. As such, dismissal is proper.

In ruling that a stay is appropriate, the court relied on Attwood v. Mendocino Coast Dist. Hosp., 886 F.2d 241, 244 (9th Cir. 1989), for the proposition that a stay

rather than dismissal, will ensure the federal court "will meet its 'unflagging duty' to exercise its jurisdiction." Although the Attwood court held that the district court should have stayed rather than dismiss plaintiff's action where parallel state court proceedings exist, Attwood is factually dissimilar from the instant action. See id. at 243. Attwood involved a wrongful termination suit first brought in state court by plaintiff Attwood against his former employer, Mendocino Hospital.

Prior to the expiration of the limitations period, plaintiff attempted to name the hospital's board members as additional defendants and to add a 42 U.S.C. §1983 claim. At the same time, plaintiff filed, but did not serve, an action in federal court naming the same defendants as well as the individual board members as defendants and included the same claims, including the Section 1983 claim. The state court ultimately denied plaintiff's motions to substitute the board members for Doe defendants and to add the Section 1983 claim. Subsequent to the state court denial of his motions, plaintiff served his federal complaint on defendants. Id. at 242. It is important to note that the concurrent federal and state proceedings differed with respect to the defendants and the claims involved, as the state claim did not include the board members as defendants nor did it include plaintiff's Section 1983 claims, whereas the federal action involved both.

Acknowledging that the state court proceedings are parallel and would provide complete resolution of the issues in plaintiff's case, the Attwood court held

16

that the district court should have stayed rather than dismiss the federal action. Id. at 243. Concluding that the state court proceedings may provide complete resolution of Attwood's claims, the court noted that it would be unnecessary to proceed further in federal court, but that the federal forum will be available if the state court forum is inadequate. Id. at 245.

Attwood, however, is factually disanalogous to the instant action as HCBCG's claims and the parties of the federal action are consolidated in the state action. Additionally, plaintiffs in the state case have added two additional defendants not parties to the federal action, unlike Attwood where there was a concern that the federal action preserved plaintiff's rights. Because HCBCG's claims are adequately protected by the more expansive and developed state court action, dismissal of HCBCG's claims in the federal action is warranted.

Unlike Attwood where the state court action did not include plaintiff's §1983 claims and the board members as defendants, while the concurrent federal proceeding involved the §1983 claims and additional defendants, the state court action involving both Dr. Woodruff and HCBCG, includes all the parties and claims of HCBCG's federal lawsuit. Because of the duplicate issues and identity of interests between plaintiffs in the federal and state actions and the additional named parties Deloitte & Touche and Dennis Warren in the state court (non-HPH defendants), proceeding with both actions simultaneously is a waste of judicial

17

resources and runs afoul of the public policy against duplicative actions and prejudices the non-HPH defendants.

It is undisputed that HCBCG's claims in the state and federal actions are now identical -- after amending the state case to include the federal claim -- and that the outcome of the state court will critically affect the federal action, therefore, the federal action should be dismissed.  Additionally, because additional party defendants are named in the state action, any decision in federal court may be binding upon these defendants.  See Jones v. Illinois Cent. R.R., 859 F. Supp. 1144, 1447(N.D. Ill. 1994) (affirming dismissal rather than a stay stating that resolution of the federal action will critically affect the state action).

Jones involved a railroad employee who brought an ADA claim against his employer pursuant to 42 USC §12101-12213 in January 1994.  In April 1993, one year prior to filing the action in federal court, Jones filed a state court lawsuit under the Federal Employers' Liability Act ("FELA," 45 U.S.C. §§51-60) which arose from the same accident that gave rise to Jones' disability.  Jones, supra at 1145.  Noting that there was no reason that Jones could not have brought his ADA claim in the same state court action where his FELA claim is pending and that the resolution of his federal ADA claim may critically affect the state FELA claim, the court dismissed the complaint. Id. at 1148.  According to the Jones decision, dismissal is warranted where there exists concurrent jurisdiction in the two courts

18

and the complete adequacy of the state court action will protect plaintiffs' rights by the simple device of adding the claim asserted in the federal court to the state court action. Id. at 1147.

It is important to note that in dismissing Jones' claim, the district court recommended that he amend the state complaint to include the ADA claim alleged in the federal action. Id. Moreover, the court conditionally granted the dismissal and allowed Jones an opportunity to reinstate the federal action as a precautionary measure in the event that the state circuit court refused to allow him to amend the complaint. Id.

HCBCG's position in the instant case is further along than the plaintiff in Jones, as there is no issue as to whether the state court will allow HCBCG to amend the complaint; plaintiffs in the state action did in fact amend the complaint to include HCBCG as a party and its corresponding federal claims. Therefore, dismissal under Jones is clearly warranted.

Although Jones is a district court opinion, it is particularly instructive as it was decided in a jurisdiction, which similar to the Ninth Circuit in Attwood, recognizes that a stay pursuant to Colorado River is generally more appropriate than dismissal. Id. at 1147 (quoting Aetna Casualty and Sur. Co. v. Kerr-McGee Chem. Corp., 875 F.2d 1252, 1261 (7th Cir. 1989)). The district court in Jones, contrary to the general holding of the Seventh Circuit, recognized that in certain factual and

19

procedural situations, where plaintiffs' rights are adequately protected in the state court action, dismissal is appropriate. Notably, <u>Jones</u> is still good law and has not been reversed by the Seventh Circuit Court of Appeals, despite its holding that dismissal rather than a stay is warranted.

Similar to the district court in <u>Jones</u>, this Court should dismiss the instant action pursuant to the unique facts of the concurrent state and federal litigation: that HCBCG's claims are admittedly incorporated into the state complaint and that it cannot credibly be disputed that HCBCG's interests are adequately protected by the state action.

Furthermore, the Deloitte & Touche and Dennis Warren defendants in the state action will be critically affected by any adverse decision in the federal court proceeding. Thus, dismissal rather than a stay is warranted in this case. Other jurisdictions, including the district court of Hawai'i, have held that dismissal pursuant to the <u>Colorado River</u> abstention doctrine is appropriate. <u>See Cerit v. Cerit</u>, 188 F.Supp. 2d 1239, 1251 (D. Hawaii 2002) (granting dismissal where <u>Colorado River</u> abstention is proper); <u>American International Underwriters, (Philippines), Inc. v. Continental Insurance Company</u>, 843 F.2d 1253, 1255 (9th Cir. 1988) (affirming dismissal of federal court action, where application of <u>Colorado River</u> abstention was necessary to prevent forum shopping and duplicative litigation); and <u>State of Idaho v. State Board of Examiners</u>, 567 F.2d 858 (9th Cir.

1978) (affirming dismissal of federal court action where abstention is justified pursuant to <u>Colorado River</u>).

In this case, it cannot be credibly disputed that the state anti-trust laws mirror their federal counterparts, and thus provide an adequate remedy for HCBCG in state court. As this Court previously noted, "the language of the state anti-trust law 'traces' the language of the federal statute." <u>See</u> Exhibit "B" Order filed October 22, 2004 (citing <u>Robert's Hawai'i School Bus v. Laupahoehoe Transp. Co., Inc.</u>, 91 Haw. 224, 227; 987 P.2d 853, 877 (1999)). As a result of the identical nature of both the federal and state anti-trust laws, the federal court runs the risk of disturbing substantive rulings made in the state court if this action is allowed to proceed.

For example, Judge Ayabe has already ruled upon and denied plaintiffs' motion for partial summary judgment with respect to defamation claims against Warren and Deloitte, which also comprised some of HCBCG's anti-trust claims. If this Court were to revisit the issue on summary judgment and rule that the HPH Defendants participated in anti-trust activity, and that the defamation issues set forth in the Voluntary Disclosure were applicable, then such a ruling will be inconsistent with the state court denial and create a conflict in state and federal court substantive rulings. To avoid any unnecessary litigation and the possibility of inconsistent substantive rulings, the clear course for this Court is to dismiss the instant federal action.

21

1.    HCBCG's and Dr. Woodruff's subsequent attempt to amend the state court action to destroy the duplicate nature of the proceedings is disingenuous and proof that they are attempting to manipulate the state court through this federal action.

HCBCG and Dr. Woodruff's counsel are well aware that the duplicative nature of the federal and state action warrant dismissal and have attempted to carve out HCBCG's state anti-trust claims against Warren and Deloitte, in an attempt to continue the life of this federal action. In a letter dated October 20, 2005, HCBCG's and Dr. Woodruff's counsel admits that Warren and Deloitte "were instrumental in laying the foundation for HPH, KMS and KMCWC to exclude HCBCG from competition." See letter from Rafael del Castillo to all counsel dated October 20, 2005, attached hereto as Exhibit "O". Despite the necessity of these additional defendants, HCBCG's and Dr. Woodruff's counsel sought to amend the state court complaint to permit HCBCG to dismiss its claims against Warren and Deloitte without prejudice pending the resolution of the federal case. Id. at 2. In the alternative, Mr. del Castillo offered to maintain the status quo and provided that HCBCG will dismiss its claims in state court pending full resolution of the federal case. All defense counsel declined to enter into the agreement Mr. del Castillo proposed. Id.

Mr. del Castillo's letter makes clear that HCBCG and Dr. Woodruff are aware of the duplicative nature of both actions, and that the maneuvering suggested

22

therein is an attempt to manipulate the state court action. HCBCG and

Dr. Woodruff seek to remove the identical interests so that this Court will be

disagreeable to staying or dismissing this action. Mr. del Castillo's actions are an

example of why strong public policy supports abstention of federal court

jurisdiction where duplicative and piecemeal litigation exists. It should also be

noted that if HCBCG is willing to dismiss its claims in state court without

prejudice, thereby maintaining two lawsuits, then it should be just as willing to

dismiss its federal claims without prejudice, since the claims are identical. See

Exhibit "C" (Second Amended Complaint) at 2 (admitting that claims of HCBCG

are consolidated in state action); and Exhibit "O" (letter from Mr. del Castillo to all

counsel dated October 20, 2005) (HCBCG willing to dismiss its claims without

prejudice pursuant to Rule 41(a)(1)(B)).

HCBCG's attempt to extricate the anti-trust issues from the state action, so

that the federal action may proceed prior to the adjudication of the state court

claims bespeaks gamesmanship and is a blatant attempt to take advantage of the

federal and state courts' concurrent jurisdiction over HCBCG's pending claims. All

of the parties, including HCBCG, are prejudiced by the duplicative, identical and

parallel proceedings. Because of the similarity of the parties and claims, the

significant development in the state court, HCBCG's gamesmanship, and the res

judicata effect the federal court ruling may have upon the state court defendants

Warren and Deloitte, this Court should abstain from asserting federal jurisdiction and dismiss the instant action.

> 2.    The parties and claims in the federal action are inextricably interrelated with the state court action as the parties' claims and additional defendants are all included in the comprehensive state court claim.

Similar to the duplicate parties and claims as amended, in Jones, supra, the parties and claims set forth in the federal action are now present in the state claim subsequent to the amendment of the first amended complaint.  In fact, as stated in Mr. del Castillo's letter dated October 20, 2005, several additional defendants in the state court action, Dennis Warren and Deloitte & Touche, are necessary to the advancement of HCBCG's federal anti-trust claims.  See Exhibit "O" (letter dated 10/20/05).  Therefore, if this Court were to allow the federal action to proceed simultaneously with the state action, Dennis Warren and Deloitte & Touche will essentially be required to participate in two trials, in one of which they are not named as parties.  Further, even if the claims are not resolved against the HPH Defendants in the federal action, the defendants will need to participate in a second trial in state court.  A substantial number of trial hours of the parties, counsel and the courts, will have been expended in vain because of the duplicate nature of both actions.  HCBCG should not be allowed to play such cat-and-mouse games with the federal and state tribunals.

In addition to the identical issues presented in the state and federal actions, it is clear that the witnesses involved in both actions will also be identical. HCBCG has named Dr. Eisentadt as its anti-trust expert in both the federal and state proceedings. See HCBCG's identification of expert filed herein on November 21, 2005, and HCBCG and Dr. Woodruff's Final Naming of Witnesses filed June 9, 2005 at 10, attached hereto as Exhibit "P". Despite the identical nature of the federal and state proceedings, evidenced by HCBCG's use of the same expert, HCBCG insists that the expert disclosure deadlines imposed by this Court should govern the discovery schedule set forth in the state action; a proposition which has been rejected by Discovery Master Yim. See Declaration of Kenneth S. Robbins.

In the state action, plaintiffs have made numerous objections that the depositions of certain witnesses needed to be completed in January to allow their expert, presumably Dr. Eisenstadt, to review the materials in time to submit a report pursuant to the federal court deadline of February 6, 2006. Because Dennis Warren, Esq. and Deloitte & Touche are allegedly co-conspirators with HPH and are instrumental to HCBCG's anti-trust claims, it would be logical to assume that HCBCG's anti-trust expert would also need to review their depositions prior to formulating their report and final opinions. Completing the depositions of these witnesses by the federal court expert witness report deadline is logistically impossible as Carmen Wolf, Ken Blickenstaff (former Deloitte & Touche

employees), and Dennis Warren are all out-of-state residents who will not be available for deposition until late January and March 2006, respectively, as a result of the parties', counsels', and the deponents' schedules.

Additionally, the Deloitte and Warren deponents will incur substantial costs and inconvenience in returning to the islands for their depositions and multiple appearances for testimony in both the state and federal trials. See Declarations of John S. Nishimoto, John T. Komeiji, and Kenneth S. Robbins. Therefore, due to the deposition scheduling in the state court case, Dr. Eisenstadt, will be unable to produce a complete report within the timeframe set forth by the federal scheduling guidelines. HCBCG and Dr. Woodruff are now caught within the web they have woven for themselves by creating two concurrent proceedings with two separate sets of discovery deadlines. Such prejudice can only be overcome if the federal action is either dismissed or stayed, as the competing discovery deadlines are duplicative and a waste of judicial resources. Additionally, imposing the federal court discovery deadlines on Judges Ayabe and Yim, invalidates and trivializes the countless hours spent by each judge in crafting an amenable discovery schedule for counsel and the parties. See Exhibit "N" (Kenneth S. Robbins deposition calendar).

> 3.     The federal court docket indicates a lack of activity.

Unlike the state action where substantial activity has taken place, nothing of substance has occurred in the federal action since the lifting of the stay. As stated

26

above, the state court complaint was amended to include HCBCG and its corresponding anti-trust claims. As the federal court action dovetails the state action, it is clear that the federal action is unnecessary to protect the interests of the parties. If HCBCG was genuine about the costs of litigation or defense costs, it would not have filed two separate lawsuits which require numerous motions filings.

In addition to the fees and costs associated with opposing HCBCG in two separate forums, HPH Defendants have incurred considerable fees in moving to dispose of this duplicative action; fees which are completely unnecessary as HCBCG's interests are now adequately protected by the state court action. To relieve the parties of the additional hardship of litigating a completely duplicative proceeding in this Court, HPH Defendants submit that dismissal is appropriate.

B.    The Defendants in the State Action Will Be Significantly Prejudiced if the Federal Action is Allowed to Proceed to Trial Before the State Action

As set forth, supra, Warren and Deloitte are integral to HCBCG's anti-trust claims in both the federal and state actions, therefore, any substantive ruling in the federal case, in which they are not defendants, may have a preclusive effect upon any action in the state case. As Warren and Deloitte are not defendants in the federal action, where identical anti-trust issues will be adjudicated, thus necessitating their appearance, they will not have an opportunity to present evidence or defend their alleged actions in the federal forum. Therefore, if the court

27

issues an order with respect to HPH Defendants' alleged anti-trust activity, such an element may be conclusively established in HCBCG's conspiracy claims alleged in the state court action.

HCBCG cannot credibly dispute that the alleged conduct of Warren and Deloitte are also at the heart of HCBCG's anti-trust claims.  See Exhibit "C" (Second Amended Complaint) (numerous references to Warren and Deloitte's participation in conspiracies to promote anti-trust activity); and Exhibit "O" (Mr. del Castillo's letter dated 10/20/05) (re: substituting parties in state case following federal court action).  HCBCG admits that because of the alleged activities of Warren and Deloitte, their participation in the federal court trial is necessary for HCBCG to establish how their conduct was "instrumental" in assisting HPH Defendants to exclude HCBCG from competition.  See Exhibit "O" (Mr. del Castillo's letter dated 10/20/05).  Regardless of whether Warren and Deloitte face liability in the federal action, they will likely be required to appear for deposition, trial, and for the state court trial.  Three appearances for these out-of-state witnesses will cause undue hardship to their personal lives and professional activities.  See Declarations of John T. Komeiji and John S. Nishimoto.

In addition to the prejudice caused to Warren and Deloitte, there are HPH Defendants who reside outside this Court's jurisdiction who will also be prejudiced by defending against two concurrent actions in separate tribunals.  Lawrence

28

O'Brien, former Kapiolani Medical Center for Women and Children Chief

Executive Officer and Executive Vice President, Roger Drue, former Kapiolani

Health CEO, and Fran Hallonquist, former CEO of Kapiolani Medical Center for

Women and Children, reside primarily on the mainland and will likely be required

to attend trial in both the state and federal court actions.

It is likely that the federal trial, set to begin on May 23, 2006, will overlap

with the state court trial which is scheduled to begin two weeks later on June 5,

2006, and is expected to last twenty-four days. Due to the proximity of the state

and federal trials, it is highly likely that if both proceed, the parties will be required

to participate in two trials simultaneously. More so, counsel for HPH Defendants

will be prejudiced as pretrial and trial preparation will be severely compromised if

counsel is forced to participate in simultaneous litigation.

Additionally, many trial witnesses are professionals who have extremely

busy schedules and whose lives will be significantly disrupted by the duplicative

out-of-state appearances. Two separate trials on identical issues would be a waste

of judicial resources, and create undue hardship and prejudice for numerous

witnesses.

C.    The Federal Action Should Be Stayed

If this Honorable Court is disinclined to dismiss this action pursuant to Jones,

Cerit, and American International Underwriters, supra, HPH Defendants request

that the court stay the federal action pending resolution of the state case.  See also

Colorado River; Moses Cone; and Exhibit "B" (Order) dated October 22, 2004

(granting stay of proceedings pending resolution of state action).  As the court has

already determined that the federal court should abstain from exercising jurisdiction

over HCBCG's claims which are identical to those raised in the parallel state court

action, this Court should renew the stay.  Id.  Subsequent developments in the state

court have inextricably interwoven the claims and parties of the federal case with

the state court action, therefore, a stay of the federal court action is appropriate, and

even more so since the initial stay was imposed.  As such, HPH Defendants request

that this Court hold all discovery and federal court expert report deadlines in

abeyance pending the state court action.  HCBCG will suffer no prejudice if a stay

of the federal court action is instituted as there is only a two-week differential

between the two actions, May 23 for the federal action and June 5 for the state

action.

D.    The May 23, 2006 Trial Date Should be Continued

In the alternative, HPH Defendants request that this Court continue the May

23, 2006 trial date, as it is only two weeks prior to the state court action.  See Local

Rules of the District Court Rule 40.4 (2005).  In the state court, Judge Ayabe

confirmed at the October 27, 2005 status conference and, more recently, at the

December 8, 2005 status conference, that the Woodruff lawsuit, set for twenty-four

trial days, was the only trial scheduled to commenced on June 5, 2006 and was, therefore, given first priority.  See Declaration of Kenneth S. Robbins.  Judge Ayabe is also assigned to the circuit court civil calendar, therefore, he has no pending criminal cases which may be entitled to priority over civil actions.  As a result, it is quite certain that the state trial date of June 5, 2005, set for twenty-four trial days, is firm set and will unlikely be moved by Judge Ayabe.

Contrary to the substantial certainty of the state court trial date, this Honorable Court, which hears both civil and criminal actions, must give priority to criminal actions pursuant to the Speedy Trial Act, 18 U.S.C. § 3161.  See United States v. Willis, 958 F.2d 60, 62-63 (5th Cir. 1992) (provisions of Speedy Trial Act are not waivable by the defendant).  Subsequent to the lifting of the stay, this Court forewarned the parties that the May 23, 2006 trial may be given a lower priority than that of a criminal case.  Specifically, this Court noted that "[t]his order does not guarantee the parties that the trial will begin on [5/23/06] as criminal cases with priority or others may prevent the court from beginning the trial as scheduled."  See Order Regarding Trial Date filed herein on August 1, 2005.  HPH Defendants also request that given the overlapping trial schedules of the state and federal courts, that the courts discuss any such conflict with each other pursuant to Hawaii District Court Local Rules 40.5 and 40.6 (judges shall, if necessary, confer in an effort to resolve a scheduling conflict).

As this Court is unable to firmly commit to the trial date of May 23, 2006 at this time, and given the state court's commitment to the June 5, 2006 trial date, HPH Defendants request that this Honorable Court postpone the federal court trial to a time mutually convenient for all parties, including the necessary witnesses Warren and Deloitte, where the federal court pretrial deadlines will not interfere with the orderly progression of discovery in the state action. HPH Defendants request that the federal deadlines be placed significantly beyond the June 5, 2006 state court trial date so as not to interfere with the state court discovery schedule, and to prohibit HCBCG from influencing or manipulating the state court action utilizing the federal court deadlines.

III.    <u>CONCLUSION</u>

For all of the reasons stated above, HPH Defendants respectfully request this Court dismiss the federal action or, in the alternative, stay the proceedings in the federal action pending the outcome of the state action, or continue trial.

DATED: Honolulu, Hawaii, _____ JAN 1 0 2006 _____.

_____
KENNETH S. ROBBINS
LEIGHTON M. HARA
WENDY M. YAMAMOTO

Attorneys for Defendants
HAWAI`I PACIFIC HEALTH,
KAPI`OLANI MEDICAL SPECIALISTS
AND KAPI`OLANI MEDICAL CENTER
FOR WOMEN AND CHILDREN

Civil No. CV03-00708 ACK LEK; <u>Hawaii Children's Blood and Cancer Group v. Hawai`i Pacific Health, et al.</u>; MEMORANDUM IN SUPPORT OF MOTION

33