30 days of the beginning of their employment or within 90 days after the execution of this CIA, whichever is later.

2. *Specific Training.* Within ninety (90) days of the effective date of this CIA, each covered individual (excluding any physician who is not an employee of KH) of KMCWC, KMCPM, and KMS who is involved directly or indirectly in the delivery of patient care and/or in the preparation or submission of claims for reimbursement for such care (including, but not limited to, coding and billing) for any Federal health care program shall receive at least four (4) hours of training in addition to the general training required above. Specific training shall still be made available to physicians who are not employees of KH and attendance logs of training by such physicians shall be maintained by KH and made available to the OIG upon request. Specific training shall include a discussion of:

    a. the submission of accurate bills for services rendered to Medicare and/or Medicaid patients;

    b. policies, procedures and other requirements applicable to the documentation of medical records;

    c. the personal obligation of each individual involved in the billing process to ensure that such billings are accurate;

    d. applicable reimbursement rules and statutes;

    e. the legal sanctions for improper billings; and

    f. examples of proper and improper billing practices.

These training materials shall be made available to OIG, upon request. Persons providing the training must be knowledgeable about the subject area.

    Affected new covered individuals shall receive this training within thirty (30) days of the beginning of their employment or within ninety (90) days of the effective date of this CIA, whichever is later. If a new covered individual has any responsibility for the delivery of patient care, the preparation or submission of claims and/or the assignment of procedure codes prior to completing this specific training, a KH covered individual who has completed the substantive training shall review all of the untrained person's work regarding the assignment of billing

6

A20543

codes.

Each year, every pertinent covered individual shall receive such specific training on an annual basis.

   3. *Certification.* Each covered individual shall certify, in writing, that he or she has attended the required training. The certification shall specify the type of training received and the date received. The Compliance Officer shall retain the certifications, along with specific course materials. These shall be made available to OIG upon request.

D. **Review Procedures**

KH has represented to OIG that, pursuant to its Compliance Program, it has retained an independent review organization (the "Independent Review Organization"), such as an accounting firm or consulting firm, with expertise in the reimbursement and billing requirements of the Federal health care programs, to review and audit on an annual basis the billing policies, procedures and practices of KH to verify that KH's submissions for reimbursement comply with all applicable Federal health care program statutes, regulations, program and carrier directives and to identify any and all instances where claims fail to meet these standards. Pursuant to this CIA, the review and audit shall be an annual requirement covering a twelve (12) month period for the following subsidiaries of KH: (i) KMCWC; (ii) KMCPM; and (iii) KMS. During the duration of this CIA if there are substantial modifications to the Federal health care programs reimbursement system, the OIG may require KH to incorporate new criteria into the Review Procedures described hereinafter.

The Independent Review Organization will conduct two separate engagements annually. One will be an analysis of KH's billing to the Federal health care programs to assist KH and OIG in determining compliance with all applicable statutes, regulations, and directives/guidance ("billing engagement"). The second engagement will determine whether KH is in compliance with this CIA ("compliance engagement").

   1. *Billing Engagement.* The billing engagement shall consist of a review of a statistically valid sample of claims that can be projected to the population of claims for the relevant period. The sample size shall be determined through the use of a probe sample. At a minimum, the full sample shall generate an estimate with a ninety (90) percent confidence level and a precision of twenty-five (25)

7

A20544

percent (i.e., the upper and lower bounds of the confidence interval shall not exceed 125% and shall not be lower than 75% of the median of the confidence interval, respectively). The probe sample must contain at least thirty (30) sample units and cannot be used as part of the full sample. Both the probe sample and the full sample must be selected through random numbers. The Independent Review Organization shall use OIG's Office of Audit Services Statistical Sampling Software, also known as "RAT-STATS," which is available through the Internet at "www.hhs.gov/progorg/oas/ratstat.html".

Each annual billing engagement analysis shall include the following components in its methodology:

    a. Billing Engagement Objective: A statement stating clearly the objective intended to be achieved by the billing engagement and the procedure or combination of procedures that will be applied to achieve the objective.

    b. Billing Engagement Population: The identity of the population, which is the group about which information is needed, and an explanation of the methodology used to develop the population and the basis for this determination.

    c. Sources of Data: A full description of the source of the information upon which the billing engagement conclusions will be based, including the legal or other standards applied, documents relied upon, payment data, and/or any contractual obligations.

    d. Sampling Unit: A definition of the sampling unit, which is any of the designated elements that comprise the population of interest.

    e. Sampling Frame: The identity of the sampling frame, which is the totality of the sampling units from which the sample will be selected.

The billing audits shall provide at a minimum:

    a. findings regarding KH's billing and coding operation (including, but not limited to, the operation of the billing system, strengths and weaknesses of this system, internal controls, effectiveness of the system);

    b. findings regarding whether KH is submitting accurate claims and cost reports for services billed to Medicare, Medicaid, and other Federal health

8

care programs;

 c. findings regarding KH's procedures to correct inaccurate billings or codings to the Federal health care programs; and

 d. findings regarding the steps KH is taking to bring its operations into compliance or to correct problems identified by the audit.

 2. *Compliance Engagement.* An Independent Review Organization shall also conduct a compliance engagement, that shall provide findings regarding whether KH's program, policies, procedures, and operations comply with the terms of this CIA. This engagement shall include section by section findings regarding the requirements of this CIA.

 A complete copy of the Independent Review Organization's billing and compliance engagement shall be included in each of KH's Annual Reports to OIG.

 3. *Verification/Validation.* In the event that the OIG determines that it is necessary to conduct an independent review to determine whether or the extent to which KH is complying with its obligations under this CIA, KH agrees to pay for the reasonable cost of any such review or engagement by the OIG or any of its designated agents.

E. <u>Confidential Disclosure Program</u>

 KH has represented to OIG that, pursuant to its Compliance Program, it has created a Confidential Disclosure Program ("CDP"), which includes a toll-free compliance telephone line whereby each call is reported in a confidential disclosure log. Accordingly, KH shall maintain its CDP which must include measures to enable covered individuals to disclose, to the Compliance Committee and/or Compliance Officer, or some other person who is not in the reporting individual's chain of command, any identified issues or questions associated with KH's policies, practices or procedures with respect to the Federal health care program, believed by the individual to be inappropriate. KH shall also publicize the existence of its hotline (e.g., e-mail to covered individuals or post hotline number in prominent common areas).

 KH's CDP shall emphasize a non-retribution, non-retaliation policy, and shall include a reporting mechanism for anonymous, confidential communication. Upon receipt of a complaint, KH's Compliance Officer shall gather information in

9

A20546

such a way as to elicit all relevant information from individuals reporting alleged misconduct. The Compliance Officer and/or Compliance Committee shall make a preliminary good faith inquiry into the allegations set forth in every disclosure to ensure that it has obtained all of the information necessary to determine whether a further review should be conducted. Moreover, KH shall, as part of its CDP, require the internal review of any disclosure that is sufficiently specific so that it reasonably: (i) permits a determination of the appropriateness of the alleged improper practice; and (ii) permits corrective action to be taken and ensures that proper follow-up is conducted.

The Compliance Officer also shall maintain a confidential disclosure log, which shall include a record of each allegation received, the status of the respective investigations, and any corrective action taken in response to the investigation.

**F. Ineligible Persons**

KH has represented to OIG that, pursuant to its Compliance Program, it has implemented a practice whereby KH shall not employ or contract with, with or without pay, any individual or entity that is listed by a federal agency as excluded, suspended, or otherwise ineligible for participation in federal programs (hereinafter "Ineligible Person Policy"). KH shall formally maintain this policy. At a minimum, KH's Ineligible Person Policy shall include the following requirements:

*1. Definition.* For purposes of this CIA, an "Ineligible Person" shall be any individual or entity who: (i) is currently excluded, suspended, debarred or otherwise ineligible to participate in the Federal health care programs; or (ii) has been convicted of a criminal offense related to the provision of health care items or services and has not been reinstated in the Federal health care programs after a period of exclusion, suspension, debarment, or ineligibility.

*2. Screening Requirements.* KH shall not hire or engage as contractors or grant staff privileges to any Ineligible Person. To prevent hiring or contracting with any Ineligible Person, KH shall screen all prospective employees and prospective contractors prior to engaging their services and screen physicians prior to granting staff privileges by (i) requiring applicants to disclose whether they are Ineligible Persons, and (ii) reviewing the General Services Administration's List of Parties Excluded from Federal Programs (available through the Internet at http://www.arnet.gov/epls) and the OIG List of Excluded Individuals/Entities

(available through the Internet at http://www.dhhs.gov/progorg/oig) (these lists and reports will hereinafter be referred to as the "Exclusion Lists").

3. *Review and Removal Requirement.* Within ninety (90) days of the effective date of this CIA, KH will review its list of current employees, contractors, and physicians with staff privileges against the Exclusion Lists. Thereafter, KH will review the list once semi-annually. If KH has notice that an employee, agent, or physician has become an Ineligible Person, KH will remove such person from responsibility for, or involvement with, KH's business operations related to the Federal health care programs and shall remove such person from any position for which the person's salary or the items or services rendered, ordered, or prescribed by the person are paid in whole or part, directly or indirectly, by Federal health care programs or otherwise with Federal funds at least until such time as the person is reinstated into participation in the Federal health care programs.

4. *Pending Charges and Proposed Exclusions.* If KH has notice that an employee or contractor is charged with a criminal offense related to any Federal health care program, or is suspended or proposed for exclusion during his or her employment or contract with KH, within 10 days of receiving such notice KH will remove such individual from responsibility for, or involvement with KH's business operations related to the Federal health care programs until the resolution of such criminal action, suspension, or proposed exclusion.

G. **Notification of Proceedings**

Within thirty (30) days of discovery, KH shall notify OIG, in writing, of any ongoing investigation or legal proceeding conducted or brought by a governmental entity or its agents involving an allegation that KH has committed a crime or has engaged in fraudulent activities or any other knowing misconduct related to a Federal or non-Federal health care program. The notification shall include a description of the allegation, the identity of the investigating or prosecuting agency, and the status of such investigation or legal proceeding. KH shall also provide written notice to OIG within thirty (30) days of the resolution of the matter, and shall provide OIG with a description of the findings and/or results of the proceedings.

H. **Reporting**

1. *Reporting of Overpayments.* If, at any time, KH identifies or learns of

11

A20548

any billing, coding other policies, procedures and/or practices that result in an overpayment, KH shall notify the payor (e.g., Medicare fiscal intermediary or carrier) within thirty (30) days of discovering the overpayment and take remedial steps within sixty (60) days of discovery (or such additional time as may be agreed to by the payor) to correct the problem, including preventing the underlying problem and the overpayments from recurring. If the overpayment is discovered as the result of any of the activities required by this CIA, the notice to the payor shall include:

a. a statement that the refund is being made pursuant to this CIA;

b. a description of the complete circumstances surrounding the overpayment;

c. the methodology by which the overpayment was determined;

d. the amount of the overpayment;

e. any claim-specific information used to determine the overpayment (e.g., beneficiary health insurance number, claim number, service date, and payment date);

f. the provider identification number under which the repayment is being made; and

g. the cost reporting period.

2. *Reporting of Material Deficiencies.* If KH determines that there is a material deficiency, KH shall notify the OIG within 30 days of discovering the material deficiency. If the material deficiency results in an overpayment, the report to the OIG shall be made at the same time as the report to the payor and shall include all of the information required by section III.H.1 plus: (i) the payor's name, address, and contact person where the overpayment was sent; and (ii) the date of the check and identification number (or electronic transaction number) on which the overpayment was repaid. Regardless of whether the material deficiency resulted in an overpayment, the report to the OIG shall include:

a. a complete description of the material deficiency, including the relevant facts, persons involved, and legal and program authorities;

12

A20549

b. KH's actions to correct the material deficiency; and

c. any further steps KH plans to take to address such material deficiency and prevent it from recurring.

3. *Definition of "Overpayment."* For purposes of this CIA, an "overpayment" shall mean the amount of money the provider has received in excess of the amount due and payable under the Federal health care programs' statutes, regulations or program directives, including carrier and intermediary instructions.

4. *Definition of "Material Deficiency."* For purposes of this CIA, a "material deficiency" means anything that involves: (i) a substantial overpayment or improper payment relating to any Federal health care program; (ii) a material violation of any Federal health care program statutes, regulations, or directives issued by relevant regulatory agencies, e.g., HCFA, or their agents (for example, such a violation would be established by credible evidence of misconduct from any source that KH, after reasonable inquiry, has reason to believe may violate criminal, civil, or administrative law related to any Federal health care program); or (iii) the provision of items or services of a quality that materially fails to meet professionally recognized standards of health care. A material deficiency may be the result of an isolated event or a series of occurrences.

IV.  NEW LOCATIONS

In the event that KH purchases or establishes new business units after the effective date of this CIA, KH shall notify OIG of this fact within thirty (30) days of the date of purchase or establishment. This notification shall include the location of the new operation, phone number, fax number, Federal health care program provider number(s) (if any), and the corresponding payor(s) (contractor specific) that has issued each provider number. All covered individuals at such locations shall be subject to the requirements in this CIA that apply to new covered individuals (e.g., completing certifications).

V.  IMPLEMENTATION AND ANNUAL REPORTS

A. **Implementation Report**

Within one hundred and twenty (120) days after the effective date of this CIA, KH shall submit a written report to the OIG summarizing the status of implementation of the requirements of this CIA. This report, known as the

13



A20550

"Implementation Report," shall be sent to the address set forth in section VI of this CIA. The Implementation Report shall include:

1. the name, address, phone number and position description of the Compliance Officer, Compliance Manager, Compliance Specialist and Compliance Network Representatives required by section III.A.1;

2. the names and positions of the members of the Compliance Committee required by section III.A.2;

3. a copy of KH's Code of Conduct required by section III.B.1;

4. the summary of the Policies and Procedures required by section III.B.2;

5. a description of the training programs required by section III.C including a description of the targeted audiences and a schedule of when the training sessions were held;

6. a certification by the Compliance Officer that:

   a. the Policies and Procedures required by section III.B.2 have been developed, are being implemented, and have been distributed to all pertinent covered individuals;

   b. all covered individuals have completed the Code of Conduct certification required by section III.B.1; and

   c. all covered individuals have completed the training and executed the certification required by section III.C.

7. a description of the confidential disclosure program required by section III.E;

8. the identity of the Independent Review Organization(s) and the proposed start and completion date of the first audit;

9. a description of any personnel action (other than hiring) taken by KH as a result of the obligations in section III.F; and

10. a listing of the number of physicians who are not employees of KH and

14

A20551

the percentage of these physicians who completed the general and specific training requirements described in section III.C (please list a separate ratio for both general and specific training).

B. Annual Report

Thereafter, KH shall submit to the OIG an Annual Report, with respect to the status and findings of KH's compliance activities.

The Annual Reports shall include:

1. any change in the identity or position description of the Compliance Officer, Compliance Manager, Compliance Specialist and Compliance Network Representatives and/or members of the Compliance Committee described in section III.A;

2. a certification by the Compliance Officer that:

   a. all covered individuals have completed the annual Code of Conduct certification required by section III.B.1; and

   b. all pertinent covered individuals have completed the training and executed the certification required by section III.C.

3. notification of any changes or amendments to the Policies and Procedures required by section III.B and the reasons for such changes (e.g., change in contractor policy);

4. a complete copy of the report prepared pursuant to the Independent Review Organization's billing and compliance engagement, including a copy of the methodology used.

5. KH's response/corrective action plan to any issues raised by the Independent Review Organization.

6. a summary of material deficiencies and reported throughout the course of the previous twelve (12) months pursuant to III.D.3 and III.H.

7. a report of the aggregate overpayments that have been returned to the Federal health care programs that were discovered as a direct or indirect

15

A20552