Deloitte & Touche LLP
180 N. Stetson
Chicago, IL 60601
USA

Tel: (312)946-3402
(312)297-3402
us.deloitte.com

# Memo

**Deloitte & Touche**

To: Hem/Onc File

From: Carmen Wolf and Jim Vagenas

Subject: Carol Kotsubo – Interview Summaries 5/30/2001 & 6/13/2001

Interview #1 - 5/30/2001

The following is a summary of the interview of Carol Kotsubo, RN, CNS held on 5/30/01 at 10:50 a.m. The purpose of the interview was to obtain information concerning billing documentation and other actions of the Nurse Practitioner (NP) assigned to the PAU.

Ms. Kotsubo has been with KH for the past eight years; she was involved with private physician practices in the beginning and later with the long term care follow-up clinic.

Ms. Kotsubo stated that Dr. Wilkinson performs his own procedures. Diane Fochtman, NP performs 95% of the PAU procedures. For a while, Dr. Woodruff was "running in to be supervising" procedures done by Ms. Fochtman. Prior to November 2000, Ms. Fochtman was performing 85-90% of all PAU procedure. Ms. Kostuvo stated that Ms. Fochtman would like to perform more of the procedures within the unit herself and she believe Dr. Glaser would confirm this for her.

In regards to the 3/10/99 meeting, Ms. Kotsubo stated that she was not at the meeting but was at various Friday division meetings where billing issues around the nurse practitioner were discussed. Ms. Kotsubo stated that at these meetings, Susan Young, Director of Pediatrics and Transport spoke for management (also Dr. Friedman on occasion) but was uncertain about the content of their presentations. Ms. Kotsubo did recall that at meetings Dr. Woodruff stated that she (Dr. Woodruff) could just run in and touch the patient to be able to bill for a procedure. Ms. Kotsubo stated that the salaries of the physicians are dependent on what they bill. She noted that Dr. Wilkinson does not bill when he does not do the procedures.

Ms. Kotsubo did not have any knowledge of issues relating to anesthesiologists nor did she have any knowledge of conscious sedation policy issues. Ms. Kotsubo did note a case where propofol was given to a child, possibly by an intensivist rather than an anesthesiologist, and the child was not intubated. The nurse gave the injection on instruction from the physician, but Ms. Kotsubo noted that the environment was well controlled and monitored in that it was done in the PICU and the med and amount administered was controlled.

Ms. Kotsubo stated that on the last JACHO survey both she and Ms. Fochtman were cited for writing orders and were instructed to stop the practice. Ms. Kotsubo stated that each had stopped but noted that

Deloitte
Touche
Tohmatsu

A20581

as recently as 5/27/01, Ms. Fochtman was again writing orders for physicians, which included chemotherapy orders, lab work, and nausea medications.

This interview concluded at approximately 11:30 a.m.

Interview #2 - 6/13/2001

The following is a summary of the interview of Carol Kotsubo on June 13, 2001 at approximately 8:00 a.m. The purpose of the interview was to obtain information concerning actions of the Nurse Practitioner (NP) assigned to the P.A.U. unit.

**Procedures**

Carol stated that she never sees Dianne perform procedures in the OR but is aware that she does do procedures in the OR. It is her understanding that Dianne is supervised in the OR by the anesthesiologist.

Carol stated that Dianne schedules all inpatient and outpatient procedures and the scheduling sheet is kept on Dianne's desk. Dianne also schedules the procedures with anesthesia.

Carol stated that she attends the division meetings and it was very clear, based on the discussions, you must perform the procedure if you want to bill. Carol then recalled Dr. Woodruff stating "I'm just going to be in the room and then I'll bill." She recalls that at another meeting, Dr. Freidman seemed to indicate that the physicians wouldn't have to perform the procedure in order to bill and that he backed off of the CBO's policy. Carol felt that that created confusion.

This interview concluded at approximately 8:45 a.m.

A20582

180 N. Stetson  
Chicago, IL 60601  
USA

Fax: (312)297-3402  
us.deloitte.com

# Memo

**Deloitte & Touche**

Date: June 22, 2001

To: Hem/Onc File

From: Carmen Wolf and Ken Blickenstaff

Subject: Mary Gaughran – Interview Detail Summary

The following is a summary of the interview of Mary Gaughran on June 12, 2001 at approximately 3:00 p.m. The purpose of the interview was to obtain information concerning actions of the Nurse Practitioner (NP) assigned to the P.A.U. unit.

### Interview Introduction

Ms. Gaughran is the PAU charge nurse. She started with Kapi'olani in 1987 and left in 1989 when she relocated, and resumed employment in 1992. From 1992 to 1999 Ms. Gaghran was employed as a staff nurse on the PAU unit and was promoted to charge nurse in 1999, the position she currently holds. In her position as charge nurse, her responsibilities include coordinating care of patients, helps with patient flow, she is one of three nurses in the unit (not including Dianne Fochtman), and she reports to Henny Breen.

Mary stated that Dianne's responsibilities include coordinating care for outer island patients and off therapy patients, schedules anesthesia for procedures, and schedules tests for patients off therapy. For about the last three years, a physician is in the PAU unit during the day.

### Written Orders

Mary recalls that as of approximately one year ago Dianne could no longer write orders but previous to a year ago Dianne could write orders. She states she is not aware of Dianne writing orders at this time. When shown recently written orders in Dianne's handwriting, Mary was shocked and stated that maybe she was wrong and that Dianne is continuing to write orders.

When asked about orders for medications related to conscious sedation, she stated that the oncologists would write the orders and that they could retrieve the narcotics from the Pyxis system on the unit. She also stated that PAU nurses would monitor conscious sedation administered by Dianne.

Mary observed that processes in the PAU unit seemed to be constantly changing, especially over the past few weeks. She stated that "it appears that no one really knows what's going on."

Deloitte  
Touche  
Tohmatsu

A20583

Page 2
Date: June 22, 2001
Re: Mary Gaughran

Procedures

Mary stated that when patients have procedures, the people in the room are an RN who attends to the patient, most often an anesthesiologist, Dianne Fochtman, and "for billing purposes, the physician needs to be there for part of the procedure." She stated that it appears that the physicians appear to be confused about what to do in order to bill for procedures. When asked when she thinks the confusion started, she stated in the last four to six months.

Mary stated the physicians complete their own charge slip and attach the pink copy of the PAU record to a chart slip and put them in a box on the unit and someone from KMS picks them up. She stated there is also a PAU slip that is completed by the nurses and entered by the unit clerk.

This interview concluded at approximately 3:30 p.m.

A20584

180 N. Stetson
Chicago, IL 60601
USA

Tel: (312)946-3402
Fax: (312)297-3402
us.deloitte.com

# Memo

**Deloitte & Touche**

Date:     June 22, 2001

To:       Hem/Onc File

From:     Carmen Wolf and Ken Blickenstaff

Subject:  Millie Ichinose – Interview #1 Detail Summary

The following is a summary of the interview of Millie Ichinose on June 21, 2001 at approximately 12:30 p.m. The purpose of the interview was to obtain information concerning actions of the Nurse Practitioner (NP) assigned to the P.A.U. unit.

### Interview Introduction

Ms. Ichinose is the Kapi'olani Pediatric OR charge nurse and has been in her current position for the past four years. Prior to her charge nurse position, she was empolyed for eight years as an OR staff nurse. As the OR charge nuse, typical duties include maintaining the OR schedule, cross-coverage for adult/gyn , making assignments depending upon skill level of staff, managing patient flow, and arranging for special supplies.

### Informed Consents

Millie stated that prior to procedures in the OR, the circulating nurse checks the patient's chart for a signed informed consent. Millie stated many times the OR staff nurses don't know about Hem/Onc procedures and that "it is a surprise to us, they don't appear on our OR schedule." Many times they're told by the anesthesiologist that the surgical procedure is going to include a Hem/Onc procedure.

### Procedures

Millie stated that just recently, within last few weeks, Dr. Wilkinson has come back to the OR to do procedures. Dr. Medeiros used to come down in the past but hasn't been seen in the OR recently and she could not recall the last time Dr. Woodruff did a procedure in the OR. Millie stated that the nurse practitioner is the one who comes down most consistently to perform procedures. She stated that "supervision of the nurse practitioner in the OR is a problem they have been grappling with for several years now." She said "our staff question how she can perform the procedures unsupervised and the issue that the circulating nurse had is that they were not comfortable writing in Dianne's name under "surgeon" in the anesthesia record." When asked what they do on the OR record, she stated that on the circulating nurse's OR record they will cross out "surgeon" and write in Dianne's name. At one point both the MD and the NP would come down and perform procedures and approximately 2-3 years ago Dianne started coming down by herself. Joane Marshall who was the OR manager at the time informed Dianne that she

Deloitte
Touche
Tohmatsu


A20585

Date: June 22, 2001
Re: Millie Inchinose

could only do procedures in the OR if she was accompanied by an oncologist. Millie believes that Joane took the issue to Risk Management. She said that she has no proof of it but she believes that the reason that it was questioned was why should the oncologists come down to the OR to supervise her when they don't supervise her on the PAU unit. She said then it seemed to be clarified then that Dianne could perform procedures in the recovery room. She doesn't remember any written communication but only verbal communication to the OR staff that it would be acceptable.

Within the last year the OR staff was told that Dianne could come back into the OR if another MD would be willing to supervise her, such as an anesthesiologist or surgeon. She stated that Dianne has been performing procedures in the OR and some anesthesiologists have been willing to supervise. She stated that one anesthesiologist wanted to clarify supervision such that they would only supervise procedures that they are certified to perform but not other procedures such as bone marrow aspiration and interthecal chemotherapy. The anesthesiologists who are willing to supervise Dianne are Dr. Hatori and Dr. Britton.

Millie can't recall whether any surgeons have ever supervised Dianne.

Millie's understanding of supervision is that the physician must be physically in the room. She stated that Dr. Medeiros has come down to supervise, Dr. Wilkinson used to come down to supervise a long time ago, and she can't recall Dr. Woodruff ever coming down to supervise. She is not sure if it is documented as to who is supervising her. She said that in order to do procedures in the OR the person's name needs to appear in their privilege book. She states that the issue with the OR staff is that Dianne's name is not in the privilege book.

This interview concluded at approximately 1:15 p.m.

A20586

Deloitte & Touche LLP
180 N Stetson
Chicago, IL 60601
USA

(312)946-3402
(312)297-3402
www.us.deloitte.com

# Memo

**Deloitte & Touche**

To:      Hem/Onc File

From:    Carmen Wolf and Ken Blickenstaff

Subject: Dr. Desiree Medeiros – Interview Summaries 5/30/2001 & 6/21/2001

**Interview #1- 5/30/2001**

The following is a summary of the interview of Dr. Desiree Medeiros held on 5/30/01 at 9:30 a.m. The purpose of the interview was to obtain information concerning billing, documentation and other actions of the Nurse Practitioner (NP) assigned to the PAU.

Dr. Medeiros started with KMS in the Division of Hematology/Oncology in September of 1997.

Dr. Medeiros stated that the issue regarding the correct billing for procedures completed by a nurse practitioner with supervision has been discussed on occasion. These two billing "practices" have include:

- If the physician completes the major component of the procedure or if the physician is physically present during the procedure, the physician is then entitled to bill for the service provided.

- A physician may bill at 80% of the physician fee schedule for the procedure if they perform at least a portion of the service with the nurse practitioner.

Dr. Medeiros stated that there is at least 1 physician present in the PAU and Wilcox at all times to fulfill the internally established supervision requirements. These requirements also state that a supervising physician must be physically present when a procedure is being performed.

In regards to billing, Dr. Medeiros categorized billing into four buckets: 1) she stated that she bills if she needles the patient and is doing the procedure; 2) she bills if she has an "active role" in the procedure, which would include collecting and labeling specimens; 3) she stated that supervision means that the physician is in the room and only observing and that the documentation would then reflect the physician was actively supervising the procedure, in which she sometimes bills; and 4) if she is not present, she does not bill.

Dr. Medeiros stated that the physicians complete the billing slips. When she first started, she billed for everything but "learned the rule" and began billing as described above. Dr. Medeiros stated that at the meeting on 3/10/99, which was led by Dr. Wilkenson, and at subsequent meetings, the physicians did not arrive at a consensus on billing but agreed to better document in order to be able to bill. Dr. Medeiros

Deloitte
Touche
Tohmatsu

A20587

stated that there are division meetings every Friday that everyone attends including Dianne Fochtman, NP, Carol Kotsubo, CNS, and the social worker.

When shown a patient medical record by Ms. Wolf, Dr. Medeiros stated that Ms. Fochtman was never instructed not to sign any part of the documentation as far as she can recall. Dr. Medeiros also stated that Ms. Fochtman completes the anesthesia records to "help out".

Dr. Medeiros stated that before her baby, she and Dr. Woodruff rotated monthly between PAU and Wilcox and that Dr. Wilkinson covers only Wilcox (but is in his private practice most of the time).

Dr. Medeiros stated that the Ms. Fochtman completes both operating room and, rarely, recovery room procedures. When Ms. Fochtman completes a procedure in these settings she would be supervised by the PAU physician and thus they would be not billed. For these procedures, she approximated that 98% are done under conscious sedation and there is always an anesthesiologist who covers. Dr. Medeiros noted that there are five anesthesiologists who rotate in PAU.

This interview was completed at approximately 9:50 a.m.

**Interview #2- 6/21/2001**

The following is a summary of the interview of Dr. Medeiros on June 21, 2001 at approximately 8:00 a.m. The purpose of the interview was to obtain information concerning actions of the Nurse Practitioner (NP) assigned to the P.A.U. unit.

**Procedures**

When asked if she recalled being at the 3/10/99 meeting, Dr. Medeiros stated she was there and that she couldn't understand exactly what Rick said but it was her understanding that the physician had to either do the procedure or some part of it to bill. She recalls that after Rick and Kathleen left the division meeting, the discussion continued and she remembers there was quite an uproar. When asked why the physicians might be upset about this, she stated it would change their billing patterns. She was then asked if her billing pattern changed as a result of the meeting and she stated yes, "before the meeting, I thought if I was in the vicinity I could bill."

Dr. Medeiros stated she didn't know what was right, she felt she had to be active in the procedure and her illustration was that if she was there and directed the NP during a difficult procedure she would bill. "I wouldn't have written that I did anything, I would co-sign a note but maybe not consistently" if she just supervised. "I wouldn't write a note if I wasn't there." Dr. Medeiros believes that Dianne documents all the procedures that she performs.

Dr. Medeiros stated that if she is not present for a procedure she does not bill, if she performs a procedure she bills, if she supervises and has to get involved she bills and involved is driven by "my judgment." Dr. Medeiros also bills if she actively participates. When asked when she is justified to bill, Dr. Medeiros stated "if I put a needle in, inject therapy, or collect a specimen, I can bill."

With regard to documentation Dr. Medeiros believes that whoever gets to the chart first writes the note. If Dianne does a procedure and writes the note, Dr. Medeiros will add a note if she did a key component of a procedure and write "I personally participated."

Dr. Medeiros was then asked if checking a medical would suffice a key component of the procedure. She stated that before two months ago "I would or might have billed." "I don't know if I should say this or

A20587(a)

Page 3
Re: Dr. Desiree Medeiros

not. There was a period of time when billing was black and white then I transitioned back. It became less clear to me because I saw other people billing when they were not personally performing."

Dr. Medeiros recalls discussions, but cannot recall specifically who, that they could bill if they just touch the needle or touch the patient. Dr. Medeiros believes that she performs about one-quarter of the procedures. "When the issue of billing was black and white to me I know I performed more procedures because I wanted to bill."

When asked what her role was regarding supervision of the NP, Dr. Medeiros stated that "we are liable, she is technically competent, but we still need to be around." Dr. Medeiros stated an example where if Dianne did an exam, Dr. Medeiros would go back and double-check it.

Dr. Medeiros believes that in the time she was not clear about the billing, she may have billed for procedures she only supervised.

This interview concluded at approximately 9:00 a.m.

A20588

Deloitte & Touche LLP
180 N. Stetson
Chicago, IL 60601
USA

(312)946-3402
Fax: (312)297-3402
www.us.deloitte.com

# Memo

**Deloitte & Touche**

To: Hem/Onc File

From: Carmen Wolf, Ken Blickenstaff

Subject: Dr. Woodruff – Interview Summaries 5/30/2001 & 6/14/2001

**Interview #1 - 5/30/2001**

The following is a summary of the interview of Dr. Woodruff held on 5/30/01, at 10:00 a.m. The purpose of the interview was to obtain information concerning billing documentation and other actions of the Nurse Practitioner (NP), Dianne Fochtman, assigned to the PAU.

Dr. Woodruff started with KMS in the Division of Hematology/Oncology in September 1997 and prior to that she worked with the same people in her private practice from September 1993 to September 1997.

Dr. Woodruff stated that Ms. Fochtman runs the off therapy clinic and is well trained in bone marrow and spinal taps. Dr. Woodruff stated that they "don't utilize her as we'd like to." Inefficiencies in patient care led to using Ms. Fochtman to some thing that Dr. Woodruff saw as beneficial, thus she started using her more. Dr. Woodruff stated that they continued using her that way until KMS formed the Hem/Onc group, which is how it is currently arranged.

In regards to billing, Dr. Woodruff stated that she was told that she could bill for procedures done by the nurse practitioner if she directly supervised her and that she did not bill if she did not directly supervise her. Dr. Woodruff stated that she was then told that she had to "participate in a meaningful way" and then told to participate in a "major way" to be able to bill. Dr. Woodruff stated that if the nurse practitioner does the procedure she does not bill. Dr. Woodruff stated that she documents a standard note which does not say who did what during the procedure and that if she is not there during the procedure she still does the documentation but does not bill. Dr. Woodruff also stated that the person who performs the procedure signs the note. Dr. Woodruff stated that in 1998 the "directly supervised" instruction was still unclear. Dr. Woodruff stated that she does not remember the 3/10/99 meeting specifically because "there were so many clarifications that it is hard to remember who instructed whom about what". But Dr. Woodruff stated that if she "is not participating in critical aspects, does not bill".

Based on the four-bucket grid, Dr. Woodruff stated that she bills for 1) and 2), 3) does not happen, and does not bill for 4). Dr. Woodruff stated the she "participates" with Ms. Fochtman in virtually all instances except when she is called away in an emergency.

Dr. Woodruff explained that there is one physician in PAU and one in Wilcox and there is a rotation on a monthly basis. However, there is much "filling in." Dr. Wilkinson was noted to only cover inpatient and

Deloitte
Touche
Tohmatsu

A20589

not the PAU. Dr. Woodruff stated that she, Dr. Glaser, and Dr. Medeiros cover the PAU and also cover Wilcox along with Dr. Wilkinson.

This interview concluded at approximately 10:30 a.m.

Interview #2- 6/14/2001

The following is a summary of the interview of Dr. Woodruff held on June 14, 2001 at approximately 12:30 p.m. The purpose of the interview was to obtain information concerning actions of the Nurse Practitioner (NP) assigned to the P.A.U. unit.

**Procedures**

She was next asked to recall the March 10, 1999 meeting. She cannot recall whether she attended the meeting.

She does recall that around that time she understood Rick Robel's position being that the "physician must perform key elements/key portion or perform it herself in order to bill." She recalls this issue was discussed "continuously" at division meetings, and the nature of the dialog after the 3/10/99 meeting was to interpret what was the key element.

When Dr. Woodruff was asked what her interpretation of the key element was, she stated, "I participate in significant of key parts, I don't just observe." Dr. Woodruff stated that Dianne can perform procedures without supervision, and "Dianne was always very careful and wanted a physician to be on campus." She stated that if we don't participate we don't bill, supervision doesn't have anything to do with billing. "If I can be in the room, then I am going to participate in key elements."

When asked to explain key elements, Dr. Woodruff stated, "In my mind I am participating if I am making sure the patient is getting the correct medicine and things are labeled correctly." Regarding the "technical component" of the procedure, she said, "anyone can do it, the most important issue is that the meds I prescribed get in there." (referring to chemotherapy in CNS) "Placing a needle is a technical issue, I don't know what is considered a key portion. I don't have to do an injection of medication to bill for it, as long as I was present, I can bill."

When asked about Rick Robel's interpretation about when it was appropriate to bill, she stated, "is he to judge what key elements are?" She then stated that Rick did not define what key elements are.

Dr. Woodruff stated she didn't know the CBO wouldn't bill if Dianne were involved in a procedure. She believes at some point Dianne was told that if she participated in a procedure, she would need to sign the note.

Dr. Woodruff was then asked to identify how procedure notes would be documented on the P.A.U. records. She stated, "whoever might write the note. If I supervise, I need to say that, if I participate or supervise, I will write the notes. Dianne's signature will be on the record when she participated." She stated that she has an understanding with Dianne that Dianne will let her know when she is going to start a procedure and she will try to get there.

She stated that Dianne is involved in a majority of the cases. She stated "I wanted to bill for all that I could."

This interview concluded at approximately 1:30 p.m.

A20589(a)