ARLEEN D. JOUXSON           7223-0
RAFAEL G. DEL CASTILLO        6909-0
JOUXSON-MEYERS & DEL CASTILLO
Attorneys at Law, A Limited Liability Law Company
302 California Avenue, Suite 209
Wahiawa, Hawai`i 96813
Telephone:  (808) 621-8806; Fax: (808) 422-8772
e-mail: rafa@hawaii.rr.com

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

[JUN 2 1 2004

at /  o'clock and  15 min. [P]M
WALTER A. Y. H. CHINN, CLERK

Attorneys for Plaintiff
Hawaii Children's Blood and Cancer Group

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| Hawaii Children's Blood and Cancer Group, ) | Civil No. CV 03-00708 ACK LEK (Other Civil Action) |
| Plaintiff, ) | FIRST AMENDED COMPLAINT |
| vs. ) | — Summons |
| Hawai`i Pacific Health; Kapi`olani Medical Specialists; Kapi`olani Medical Center for Women and Children, ) | |
| Defendants. ) | |

## **COMPLAINT**

Plaintiff Hawaii Children's Blood and Cancer Group ("HCBCG"), a

medical group comprised of physicians who are board certified in the subspecialty

of pediatric hematology-oncology, by and through its attorneys, Jouxson-Meyers &

del Castillo, AAL, LLLC, hereby complains and demands a jury trial of its claims

against Hawai`i Pacific Health ("HPH"), formerly known as Kapi`olani Health,

Kapi`olani Medical Center for Women and Children ("KMCWC"), and Kapi`olani

Medical Specialists ("KMS") (all parties complained against are sometimes

collectively referred to as "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1.      This Complaint seeks a permanent injunction requiring

Defendants to divest themselves of any interest, ownership in or control of

pediatric hematology-oncology physician clinical services, and other relief for

violations of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§1-2.

2.      This Complaint was occasioned by Defendants' concerted

efforts to exclude HCBCG physicians from the market for clinical pediatric

hematology-oncology ("hem-onc") physician services in Hawai`i, and the related

markets for pediatric hem-onc medical education and research to secure

monopolies in all such markets in the State of Hawai`i. Defendants' conduct was

and is unlawful under Sections 1 and 2 of the Sherman Act.

3.      Defendants employed unfair methods of competition to achieve

their exclusion of the HCBCG physicians from the markets for clinical pediatric

hem-onc physician services, medical education and research. Defendants' unfair

methods have largely been successful: Defendants caused the HCBCG physicians

to be excluded from participation in the regular faculty of the medical school and

2

from opportunities for research, and to lose a large percentage of their patients in the six months immediately following Defendants' first exclusionary act, and a commensurately large percentage of their gross revenues from providing pediatric hematology-oncology services; and due to the Defendants' interference and diversion of new patient referrals, the HCBCG physicians' share of referrals of new patients has been reduced from about 70% to nearly 0%, driving HCBCG's share of the market for clinical pediatric hem-onc physician services below the amount necessary to sustain its business.

## JURISDICTION

4.    This Complaint is filed and these proceedings are instituted pursuant to Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, and sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to obtain injunctive and restitutionary relief and to recover damages, and reasonable attorneys' fees and costs of suit.

5.    This Court has federal question and original jurisdiction pursuant to 15 U.S.C. §§ 15 and 26, and 28 U.S.C. §§ 1331 and 1337. This Court has supplemental jurisdiction over such Hawaii statutory and common law claims as HCBCG may assert pursuant to 28 U.S.C. § 1367.

6.    Further, under Hawai`i law, Defendants' decisions actually and constructively terminating the hospital privileges held by HCBCG's physicians are

subject to public supervision and control because, on information and belief, at all relevant times herein Defendants' hospitals received more than nominal governmental involvement in the form of funding. *See Silver v. Castle Memorial Hospital*, 53 Haw. 475, 482, 497 P.2d 564 (1972).

## VENUE

7.      Venue is proper and convenient in this District pursuant to 28 U.S.C. §1391. Defendant organizations/entities were doing business in the State of Hawai`i at all relevant times herein, and the Defendants committed the acts injuring HCBCG and its physicians from or in the State of Hawai`i.

## PARTIES

PLAINTIFF

8.      Hawaii Children's Blood and Cancer Group ("HCBCG") is an unincorporated medical group consisting of two pediatric hematology-oncology physicians, both of whom are board-certified in the pediatric subspecialty of hematology and oncology (commonly referred to as "hem-onc"), and both of whom have had full medical staff privileges in hem-onc and bone marrow transplantation at Kapi`olani Medical Center for Women and Children ("KMCWC") since prior to 1997.

9.      HCBCG does business in the State of Hawai`i as a pediatric hematology-oncology medical group.

10.    HCBCG is an efficient enforcer of the antitrust laws because the injuries alleged herein are neither speculative nor indirect.

11.    HCBCG has standing to allege injuries it has suffered directly and to bring claims on behalf of its members, whose damages claims are shared in common.

## DEFENDANTS

12.    HCBCG is informed and believes and thereon alleges that, at all relevant times herein, Hawai`i Pacific Health ("HPH"), was a Hawai`i nonprofit that owns various for-profit and non-profit entities involved in marketing various health care services to the Hawaii public.  The boards of directors of the various HPH-owned/controlled entities, including the boards of Defendants KMCWC and KMS, are interlinked.

13.    HCBCG is informed and believes and thereon alleges that, at all relevant times herein, Kapi`olani Medical Center for Women and Children ("KMCWC") was a Hawai`i nonprofit corporation, located at 1319 Punahou Street in Honolulu, operating a hospital furnishing facilities to the members of the medical profession in aid of their service to women and children.  HPH owns KMCWC.

14.    HCBCG is informed and believes and thereon alleges that, at all relevant times herein, Kapi`olani Medical Specialists ("KMS") was a Hawai`i

nonprofit corporation, located at 1319 Punahou Street in Honolulu.

15.    HPH owns the only pediatric tertiary cancer center in Hawai`i that is open to the public, located at KMCWC. KMCWC is the only public facility in Hawaii providing the full complement of services for <u>inpatient</u> pediatric cancer care. KMCWC also provides nearly all pediatric cancer <u>outpatient</u> care.

16.    No hospitals in Hawaii compete with KMCWC for the services of qualified pediatric hem-onc physicians. Even if a hospital invested the large sums necessary to establish a tertiary cancer facility for children, it may not be able to secure access to resources that are essential to providing state-of-the-art care.

17.    KMS was organized by HPH predecessor, Kapi`olani Health, to be a medical group employing physicians practicing clinical subspecialties, primarily physicians whose practices involve hospital inpatient and outpatient care and who admit patients to KMCWC, and physicians whose practices are largely devoted to research. Since 1997, KMS has employed physicians providing pediatric hematology-oncology physician services to patients admitted to KMCWC, or patients accessing care at KMCWC's clinics, and pediatric hematology-oncology researchers.

18.    Defendant HPH (and its predecessor) has used KMS to obtain monopolies in various subspecialties, controlling those subspecialties and wrongfully excluding physicians who are certified in such subspecialties from

6

establishing a clinical or research practice in Hawai`i, or driving such physicians away from the Hawai`i market to other states. That is not to say that Defendant KMS always has a unity of interests with the interests of Defendant HPH because it is inherently likely that the interests and loyalties of the all-physician staff of Defendant KMS frequently diverges from, and may be adverse to, the interests of Defendants HPH and KMCWC in material respects.

## TRADE AND COMMERCE

19.    Patients, referring physicians, the University of Hawai`i John A. Burns School of Medicine ("JABSOM"), hospitals in Hawai`i and other states and territories, grantors, and third party payors, including health plans and the plans funded by the Federal and State governments are all consumers of pediatric hem-onc physician clinical, teaching, and research services, and no substitute exists for pediatric hem-onc physician services in those markets.

20.    Pediatric hem-onc services are frequently acute in nature provided to the patient in an inpatient or outpatient hospital setting, and are always distinct services requiring highly specialized capabilities that are necessary to meet the medical, surgical, and other needs of patients.

21.    To access life-saving, state-of-the-art techniques, medicines, and facilities, patients must be under the care of a board-certified pediatric hem-

onc physician in clinical practice. The pediatric hem-onc physician manages and directs the patients' care which is delivered by a number of specialized providers.

22.    In a freely competitive market,

a.    Patients and their primary care physicians choose and request a particular pediatric hem-onc physician, separate and distinct from any requests for inpatient and outpatient hospital services, to coordinate all of the services the patient requires in combating the disease. Patients form enduring physician-patient relationships with their chosen pediatric hem-onc physician;

b.    Patients and their pediatric hem-onc physician select services and facilities according to medical necessity, and independent of the influence or control of any person or entity that might have an interest in promoting the utilization of such services or facilities;

c.    Medical students and residents seek the most experienced faculty and best program for their pediatric hem-onc medical education, and the medical school seeks the best-qualified pediatric hem-onc physicians, both clinicians and researchers, to serve as regular faculty, training medical residents and students;

d.    Grantors require that research physicians be members of the regular medical school faculty to be appointed principal investigator for

a research undertaking; and

e.     Third party payors permit only qualified pediatric Hem-Onc physicians with acceptable reputations and records to participate with their plans.

23.    Defendants interfered with the free flow of information in the market for pediatric hem-onc services in order to exclude the HCBCG physicians from competition with Defendants' physicians in the markets for clinical pediatric hem-onc physician services, medical education, and research.

24.    The free flow of information is essential to choices by patients, physicians, medical students and residents, JABSOM, grantors, and the third party payors because a lack of adequate information and/or false and/or misleading information renders these consumers unable to evaluate the services available from competing pediatric hem-onc physicians. False and misleading information disseminated by Defendants influences all of the foregoing consumers in choosing a pediatric hem-onc physician, and such has the capacity to deceive a substantial segment of such consumers.

25.    From 1997 and thereafter, Defendants possessed a monopoly in nearly all inpatient and outpatient hospital services required by pediatric hem-onc patients and their referring physicians, medical students and residents, JABSOM, the grantors, and the third party payors.

## FACTS COMMON TO ALL CLAIMS

26.    Prior to January 31, 2002, Defendants owned the facilities, and employed or controlled physicians, paraprofessionals, and even the medical school division offering medical residents education in hem-onc care, which provided the whole gamut of services pediatric hem-onc patients might access in Hawai`i.

27.    An optimal pattern of providing services to pediatric hem-onc patients, providing education to medical students and residents, and research developed around Plaintiff HCBCG's physicians' forty years of experience in diagnosing and treating pediatric cancers. Plaintiff HCBCG's physicians collaborated with the pediatric hem-onc physicians Defendant KMS employed in the care of all pediatric hem-onc patients. All patients benefited from the knowledge and experience Plaintiff HCBCG's physicians passed on to the pediatric hem-onc physicians that Defendant KMS employed—who had between them less than seven years of experience—and to medical students and residents. The collaboration was characterized by an intensive professional dialogue between all of the pediatric hem-onc physicians, in which paraprofessionals, primary physicians, and patient guardians participated, reflecting the gravity of the diseases being treated. The collaboration also provided a richly educational experience for medical school students and residents which attracted students from other states and countries.

28.    The patient-sharing collaboration which incorporated all of Defendants' facilities, staff, and KMS-employed specialists was marketed to primary care physicians practicing outside of Defendants' entities and their patients, and to medical students and residents, as "Team Care."

29.    The collaboration of the pediatric hem-onc physicians made it possible to provide the national standard of care in Hawai`i, persuading independent primary care physicians to refer all their pediatric patients with serious blood disorders or cancer to the "team," and persuading consumers of pediatric hem-onc care to embrace Team Care as the standard of care pediatric hem-onc patients require.

30.    Pediatric hem-onc patients entered Team Care through portals of entry established and monitored by Defendants; and medical students and residents, and research grants, entered the education experience through portals controlled by Defendants.

31.    Thus, in January 2002 Team Care was an essential facility under the meaning of *Aspen Highlands Skiing Corp v. Aspen Skiing Co.*, 738 F.2d 1509 (10th Cir. 1984), providing all of the pediatric cancer clinical care, all of the pediatric hem-onc medical education, and receiving all or nearly all of the pediatric hem-onc research grants in Hawai`i

32.    In January 2002, Defendants began taking action to exclude

Plaintiff HCBCG's physicians from the patient-sharing and pediatric hem-onc physician collaboration.

33.    Defendants' decision to terminate Team Care was an unlawful decision by a monopolist to make an important change in the character of the markets for pediatric hem-onc physician care, medical education, and research grants for anticompetitive purposes, under the meaning of *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985).

34.    To exclude Plaintiff HCBCG's physicians from the collaboration, Defendants published and mailed letters to all hem-onc patients requiring them to choose either one of Defendants' pediatric hem-onc physicians or one of HCBCG's physicians.  Defendants' letters informed patients that the HCBCG physicians would be excluded from collaborating in their care, but promised that the pediatric hem-onc physicians Defendants employed would continue to freely collaborate in providing patient care.

35.    The cost of duplicating the facilities and services owned and controlled by Defendants, and providing alternative medical education, is so prohibitive that even large entities refuse to enter into competition with Defendants.  Defendants thus imposed impossibly high costs on Plaintiff HCBCG to compete with them in the markets for pediatric hem-onc physician services.

36.    Patients initially attempted to reject the choice Defendants attempted to force upon them. Defendants responded by tasking their pediatric hem-onc social worker to intercept patients who attempted to access a pediatric hem-onc physician's care and force them to select a pediatric hem-onc physician.

37.    Several patients attempted to choose both the HCBCG physicians and Defendants' pediatric hem-onc physicians, essentially attempting to preserve or refusing to give up Team Care and the collaboration, but Defendants denied those choices and required the patients to select one physician.

38.    Because Defendants owned the facilities and employed the paraprofessionals and the physicians in subspecialities that pediatric hem-onc patients often require in their care, some patients felt inherently threatened that they would be denied essential elements of care or service, or would otherwise be discriminated against by Defendants' staff if they selected one of Plaintiff HCBCG's physicians. A high percentage of patients eventually selected one of Defendants' pediatric hem-onc physicians.

39.    The pediatric hem-onc physicians Defendant KMS employed vigorously complained that one of Plaintiff HCBCG's physicians was attempting to continue her relationships with patients who had been forced to choose one of the Defendant KMS physicians, causing the CEO of Defendant KMCWC to summarily suspend the HCBCG physician's hospital privileges, and request that

13

the KMCWC Medical Executive Committee and its Board of Directors permanently revoke her privileges. She was forced to endure the humiliation of being marched out of the hospital with all of her belongings under guard; and was prevented from returning to practice for a month until the Medical Executive Committee reversed the suspension and restored her privileges.

40. Thereafter, the pediatric hem-onc physicians employed by Defendant KMS actively refused to collaborate with Plaintiff HCBCG's physicians even after Defendants agreed to hire a facilitator to attempt to re-establish the collaboration.

41. Defendants also conspired with the chair of the medical school's Department of Pediatrics, to exclude Plaintiff HCBCG's physicians from positions on the regular faculty of the medical school's pediatric hem-onc division, to put them in a bad light professionally and prevent them from receiving research appointments. Because participation in the pediatric hem-onc division of the JABSOM faculty is essential to any pediatric hem-onc physician to pursue a career in the subspecialty, the hem-onc division regular faculty is also an essential facility under the meaning of *Aspen Skiing*.

42. Defendants have employed other unfair means to exclude the HCBCG physicians from competition:

14

a. Defendants removed the HCBCG physicians' names from the hospital on-call schedule to exclude them from referrals from outside physicians to KMCWC.

b. Defendants admonished KMS-employed physicians that all patients should be referred to the KMS-employed hem-onc physicians, with the result that the HCBCG physicians have received no referrals through KMCWC or KMS.

c. Defendants instructed their telephone operators and other employees to divert all referrals and inquiries concerning hem-onc care to KMS-employed hem-onc physicians.

d. Defendants committed numerous subsequent acts, too numerous to list here, constituting unfair competition against the HCBCG physicians to deprive them of patients.

43. The pediatric hem-onc physicians employed by Defendant KMS have also employed unfair means to exclude Plaintiff HCBCG's physicians from competition because they have a personal stake in lessening competition. Plaintiff HCBCG's physicians have attempted for months to negotiate the re-establishment of the collaboration described above in a facilitation Defendants agreed to, but the KMS-employed pediatric hem-onc physicians have refused to collaborate on rounds with Plaintiff HCBCG's physicians, to permit their names to

be restored to the physician on-call schedule, and have blocked implementation of measures that would require an equitable distribution of referrals and effectively counterbalance Defendants' absolute control over the portals through which consumers access pediatric cancer care.

44.    The KMS-employed pediatric hem-onc physicians have openly admitted that their refusal to re-establish the collaboration is motivated by their own self-interest and that, but for their refusal to permit the collaboration to be restored, Defendants' exclusion of Plaintiff HCBCG's physicians would cease.

## COUNT I

(Monopolization, Continuing Violation of 15 U.S.C. §2)

45.    HCBCG repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 44 above as though fully set forth herein.

46.    Through various means, including purchasing weaker competitors and purchasing control over the cancer protocols necessary to provide the standard of care to pediatric hem-onc patients, Defendants obtained a monopoly in providing hospital facilities and services for pediatric hematology-oncology patients prior to 1997.

47.    Defendants entered into a joint marketing program with Plaintiff HCBCG's physicians to create a Team Care facility integrating all of the

facilities and services, including physician services, required by pediatric patients with cancer and blood disorders, and which met the standard of care for tertiary centers.

48.    Having achieved acceptance of the Team Care facility among patients and referring physicians, Defendants wrongfully terminated the physician collaboration and required patients to select one physician with the purpose of excluding Plaintiff HCBCG physicians from the market.

49.    Defendants used misrepresentations, coercion, and implied threats of retaliation against patients who attempted to choose the HCBCG physicians or who attempted to preserve their access to Team Care by choosing the HCBCG physicians as well as Defendants' physicians.

50.    Physicians employed by Defendant KMS—for their own personal benefit and stake in lessening competition—conspired with Defendants HPH and KMCWC to exclude the HCBCG physicians from competition and from participation in the JABSOM faculty, in any respect, and aggressively interfered with the existing relationships Plaintiff HCBCG's physicians had established with referring physicians and patients to exclude Plaintiff HCBCG from competition, constituting in whole or in part an unlawful conspiracy in violation of 15 U.S.C. § 1, and of 15 U.S.C. § 2.

51. Defendants' experts from the University of Washington School of Medicine and an independent expert engaged by the Cancer Research Center of Hawaii concluded that Defendants' termination of the collaboration and Team Care had serious actual and potential adverse impacts on patient care, and was thus detrimental to the public interest in making the best possible pediatric care available in Hawai`i.

52. An unlawful price effect directly resulted from Defendants' exclusion of Plaintiff HCBCG's physicians because the quality of care was lowered when Defendants terminated the collaboration, but they did not reduce prices.

53. Defendants' exclusion of Plaintiff HCBCG's physicians gained Defendants the ability to price discriminate; and Defendants used the implied threat of discrimination to control consumer choices, causing patients to choose physicians employed by Defendant KMS, a choice that defies common sense and logic because the KMS-employed physicians lacked essential, possibly life-saving experience.

54. Excluding Plaintiff HCBCG's physicians from competition also secured to Defendants monopoly leverage power over the utilization decisions of their pediatric hem-onc physicians to unlawfully increase the utilization of services and facilities from which Defendants receive income.

55.    Patients and third party payors are harmed by such monopoly leverage power to the extent they are forced to pay for prescribed services and facilities of Defendants that were not medically necessary.

56.    Defendants' conduct constitutes willful establishment and maintenance of their monopoly in the market for pediatric hematology-oncology services, attended by the evils of monopolization.

57.    As a result of Defendants' violations of 15 U.S.C. §2, Plaintiff HCBCG has sustained special and general damages in amounts to be proven at trial, including past and future lost income, entitling it to have its damages trebled, and receive an award of reasonable attorneys' fees and costs of suit.

## COUNT II

(Refusal to Deal, Violation of 15 U.S.C. §1)

58.    HCBCG repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 57 above as though fully set forth herein.

59.    Defendants and co-conspirator physicians acted in concert to exclude Plaintiff HCBCG's physicians from competing with Defendants in the market for pediatric hem-onc physician services, and from participation on the JABSOM regular faculty.

60.    Defendants instigated, orchestrated, coerced, and enforced a boycott of Plaintiff HCBCG's services by physicians, patients, and JABSOM; and physicians not named as defendants herein conspired with Defendants to boycott Plaintiff HCBCG by referring all hem-onc related matters to Defendants' physicians, and referring no hem-onc related matters to Plaintiff HCBCG's physicians.

61.    As a result of Defendants' violations of 15 U.S.C. §1, Plaintiff HCBCG has sustained special and general damages in amounts to be proven at trial, including past and future lost income, entitling it to have its damages trebled, and receive an award of reasonable attorneys' fees and costs of suit.

### COUNT III

(Attempt To Monopolize, Violation of 15 U.S.C. §2)

62.    HCBCG repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 61 above as though fully set forth herein.

63.    As set forth above, Defendants unlawfully obtained a monopoly in pediatric hem-onc physician services by purchasing a monopoly in those services.

64.    Defendants created Team Care with the HCBCG physicians, turning Team Care into an essential facility.

65.    Defendants then engaged in various unfair acts calculated to exclude the HCBCG physicians entirely from competition and monopolize the market for pediatric hem-onc physician services, and obtain the ability to control prices and quality, and to leverage their monopoly over pediatric hem-onc services into increased utilization over other services and facilities from which Defendants benefit.

66.    The pediatric hem-onc physicians not named as defendants herein conspired with Defendants to monopolize the markets for pediatric hem-onc clinical services to enhance their own professional standing, interests and benefits in the markets for medical education and research.

67.    Defendants' conduct constitutes an attempt to monopolize the market for providing pediatric hem-onc physician services, over which they have a high probability of success due to their monopoly in the market for pediatric hem-onc inpatient and outpatient facilities and services. As a result of Defendants' attempts to monopolize the market for providing pediatric hem-onc physician services, HCBCG physicians and other providers of pediatric hem-onc physician services are precluded from successfully competing with Defendants in that market, and the market is thereby harmed by restricting the flow of information and free competition.

68.    As a result of Defendants' attempts to monopolize the market for pediatric hem-onc physician services, HCBCG has sustained special and general damages in amounts to be proven at trial, including past and future lost income, entitling it to have its damages trebled, and receive an award of reasonable attorneys' fees and costs of suit.

## COUNT IV

(False and Misleading Advertising, Violation of Lanham Act, 15 U.S.C. § 1125)

69.    HCBCG repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 68 above as though fully set forth herein.

70.    As set forth above, Defendants provided false and misleading information and allegations to patients and physicians concerning the HCBCG physicians.

71.    The publication of such information was commercial speech because it directly proposed choices that affected Defendants' economic interests.

72.    HCBCG was injured as a result of Defendants' publication of such statements.

73.    As a result of Defendants' violations of the Lanham Act, HCBCG has sustained special and general damages in amounts to be proven at

trial, including past and future lost income, entitling it to have its damages trebled, and receive an award of reasonable attorneys' fees and costs of suit.

## EFFECTS

74.   The foregoing unlawful monopoly and attempted monopolization, and combinations and conspiracies have had the following effects, among others:

a.    Defendants have obtained and maintained pricing power in the prices of hospital outpatient pediatric hematology-oncology services;

b.    Defendant KMS has obtained and maintained pricing power in the prices of pediatric hematology-oncology physician services;

c.    Defendants have materially increased their power to influence utilization of their services and facilities, in derogation of the interests of patients, third party payors, and the public;

d.    Competition in pediatric hematology-oncology physician services has been unreasonably restrained.

e.    Defendants have unlawfully acquired the ability to exclude competition in the market for pediatric hem-onc physician services, and have improperly obtained access to patients and control of essential academic status, including short and long term economic rewards that were

not available to them except by excluding the HCBCG physicians from Team Care and JABSOM faculty.

## PRAYER FOR RELIEF

WHEREFORE, HCBCG respectfully prays for relief as follows:

A.    For an Order, pursuant to 15 U.S.C. § 26, requiring Defendants to offer all existing and new patients the option of receiving their care from a team that includes Plaintiff's physicians and any board-certified pediatric hem-onc clinical physicians Defendants have under contract or in their employ, and to remit a stipend of $20,000 monthly to Plaintiff for its physicians' participation in "Team Care"; and appointing a special master to monitor Defendants' compliance with the injunction for 3 years. Defendants shall be entitled bill third party payors for all physician services Plaintiff's physicians provide to "Team Care" patients.

B.    That this Court adjudge and decree that Defendants and co-conspirators have entered into unlawful contracts, combinations, or conspiracies which unreasonably restrain trade in interstate commerce, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

C.    That this Court adjudge and decree that Defendants have unlawfully acquired or attempted to acquire and maintain a monopoly in the market for pediatric hem-onc physician services, constituting violations of Section 2 of the Sherman Act, 15 U.S.C. § 2.

D.    For special and general damages in an amount to be proven at trial for lost opportunities and lost income;

E.    For treble damages pursuant to 15 U.S.C. § 15(a);

F.    For an award of HCBCG's reasonable attorneys' fees and costs of this action pursuant to 15 U.S.C. § 15(a), and

G.    For any and all other relief that this Court may consider necessary, just, or appropriate to restore competitive conditions in the markets affected by Defendants' unlawful conduct.

Dated:  Honolulu, Hawai`i, May 21, 2004

Respectfully submitted,

ARLEEN D. JOUXSON
RAFAEL G. DEL CASTILLO

Attorneys for Plaintiff
Hawaii Children's Blood and Cancer Group

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

### District of Hawaii

Hawaii Children's Blood and Cancer Group,
Plaintiff

**SUMMONS IN A CIVIL ACTION**

V.

Hawai`i Pacific Health; Kapi`olani Medical
Specialists; Kapi`olani Medical Center for
Women and Children,

CASE NUMBER:   CV 03-00708 ACK LEK

Defendants

TO: (Name and address of Defendant)

> ALL ABOVE-NAMED DEFENDENTS
> c/o Hawai'i Pacific Health
> 55 Merchant Street, 27th Floor
> Honolulu, Hawai'i 96813

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

> ARLEEN D. JOUXSON
> RAFAEL G. DEL CASTILLO
> JOUXSON-MEYERS & DEL CASTILLO, AAL, LLLC
> 302 California Ave., Suite 209
> Wahiawa, Hawai`i 96786

First Amended

an answer to the complaint which is served on you with this summons, within _____ ten (10) _____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

WALTER A.Y.H. CHINN

JUN 2 1 2004

| CLERK | | DATE |
|---|---|---|
| /s/ Alison Greaney | SEAL | |
| (By) DEPUTY CLERK | | |